[No. 3502.]

## COLLINS v. BAILEY ET AL.

1. PLEADINGS—*Amendment of Answer—New Defense.* To allow, pending plaintiff's motion for a new trial, an amendment of the answer setting up a new defense, upon which no sufficient or competent testimony was given upon the trial, is error.

2. —— *Showing Cause.* So, to allow such amendment, without cause shown therefor, as required by the code (Mills' Code, sec. 75, Rev. Code 1908, sec. 81.)

3. —— *New Trial.* Where, after verdict for the defendant, a new defense is received by way of amendment to the answer, it is the duty of the court to award a new trial.

4. LODE CLAIMS—*Following Dip of Vein.* The right to follow the dip of the lode granted by sec. 2322 of the Revised Statutes of the United States is in derogation of the common law, and whoever claims under the statute has the burden of proving the continuity of his vein from his surface ground into the premises of his neighbor. And the question is not to be left to the con jectures of the party, or even of expert witnesses, not supported by any competent testimony affording ground for an intelligent judgment.

Where the place of the alleged trespass upon plaintiff's vein was separated from the apex of defendant's vein by five hundred and fifty feet of unbroken ground, was distant from it longitudinally, at right angles, three hundred feet, there were many veins upon the same mountain of the same general dip and strike as the plaintiff's vein, and with the same character of ore, the only working or opening upon defendant's vein at the surface was a shaft of less than one hundred feet in depth, the only opening upon the vein at the point of the alleged trespass was an upraise of forty-five feet, and there was evidence that if the vein in such upraise continued in the same course to the surface it would have its apex within the plaintiff's surface ground, it was held that the opinion of engineers that the vein shown in the two openings was the same, was mere conjecture and too wild a guess to be accepted as proof.

*Appeal from Eagle District Court.* HON. CHAS. CAVENDER, Judge.

Mr. M. B. CARPENTER, for appellant.

SCOTT, P. J., delivered the opinion of the court.

On the 25th day of January, 1907, the plaintiff in this case filed his amended complaint in the district court of Eagle county alleging, substantially, that on the 1st day of September, 1906, he was and ever since and hitherto has been the owner in fee simple of the Australian, the Shamrock and the Hecla lode mining claims situated in the Holy Cross mining district in Eagle county; that he claims the right to occupy and possess said premises, and is entitled to the possession thereof, by a full compliance with the local laws and rules of said mining district, the laws of the state of Colorado, and by patents from the United States; and further, that the defendant, The French Mountain Mining Company, and the defendants, John W. Bailey, W. B. Brown and Edward Brown, on or about the first day of November, 1906, wrongfully entered into said claims and have ever since unlawfully held possession of the same, and have been extracting therefrom, as plaintiff is informed and believes, ores of the value of one hundred thousand dollars. The prayer was for recovery of possession of the several lode mining claims, for damages and for costs of suit. To this complaint there were filed the separate answers of the defendants, but all of these were similar and alleged, in substance, that as to whether or not the plaintiff was the owner of the claims mentioned in the complaint, defendants had not and could not obtain sufficient knowledge or information upon which to base a belief, and deny that on November 1st, 1906, or at any other time, the defendants or any of them, wrongfully or otherwise entered upon the said claims, or any of them, or at said date or since, or at any time, have wrongfully

held possession thereof, and deny that said defendants, or any of them, have extracted ore therefrom of the value of any sum whatsoever.

Upon this complaint and these separate answers the case was tried to a jury which returned a verdict in favor of the defendants in the following words: "We, the jury, find the issues herein joined for the defendants, and that the defendants, W. B. Brown and Edward Brown, are the owners, and the defendant, The French Mountain Mining Company, is the lessee, and entitled to the possession of the vein or lode opened and developed in the Hecla and Shamrock lode claims by what is known as the lower tunnel."

Pending a hearing on a motion for a new trial the court permitted the defendants, over the objection of plaintiff, to file a joint amended answer in which it was alleged, among other things, that the defendants further answering said complaint, and by way of counterclaim, allege that at all times mentioned in plaintiff's complaint the defendants, W. B. Brown and Edward Brown, were, and still are, the owners in fee simple of the Grand Trunk lode mining claim, situate in the Holy Cross mining district, state of Colorado; that on or about the ...... day of August, 1904, they gave or extended a lease of, or bond upon said claim to the defendant, John W. Bailey, who thereafter and in May, 1906, assigned said lease and bond to the defendant, The French Mountain Mining Company, which, ever since said time, has been in the actual possession and occupancy of said lode and vein; and that said Grand Trunk lode lies parallel and adjacent to the Australian lode claim, and that the said Australian,

Hecla and Shamrock claims lie parallel to each other, in one body, with end lines practically upon one line; that the said defendant, The French Mountain Mining Company, cut and intersected at a point within the exterior sidelines of the said Australian, Shamrock and Hecla group, the Grand Trunk lode, and the vein thereof; that said vein so drifted upon by said company is the vein in controversy in this action, and is the only vein from which the defendants have extracted or taken out any ore in said tunnel. Defendants further allege that said vein is the Grand Trunk vein and has been disclosed and discovered along, upon and in the said Grand Trunk lode, and that said vein throughout its entire depth is the property of the defendants, as owners or lessees of the Grand Trunk vein, and as being a vein apexing upon and within the said Grand Trunk lode. It was further alleged that the plaintiff has no right, title or interest whatever in or to said lode, and that although the vein was cut at a point within the side lines of the Australian, Shamrock and Hecla group extended downwards vertically, the said vein was so cut, because in its dip it crossed the vertical side lines of the Australian lode, and that said vein in its dip extended into the ground beneath the surface of the said Australian and Shamrock claims, but continues at all times to the Grand Trunk vein apexing upon the Grand Trunk lode, and belonging thereto, and that said vein where the same is cut and developed in said tunnel is the identical vein located, opened up and developed on the surface of the Grand Trunk lode mining claim. Further, defendants disclaimed any right or title to said Australian, Shamrock and Hecla claims

except their right and title to the Grand Trunk vein
so far as the same may lie beneath the surface boun-
daries of said Australian, Shamrock and Hecla
claims, between vertical planes drawn downward
through the end lines of said Grand Trunk lode, so
continued in their own direction that such planes
will intersect such exterior parts of such vein or
lode, and their right to remove ore and other ma-
terial from their said Grand Trunk lode. The de-
fendants prayed that the defendants, W. B. Brown
and Edward Brown, be adjudged to be the owners,
and the defendant, The French Mountain Mining
Company, be adjudged to be the lessee and entitled
to the possession of the alleged Grand Trunk lode
or vein, cut within the side lines of plaintiff's lode
claims.

After this answer was permitted to be filed, the
court overruled plaintiff's motion for a new trial
and rendered judgment in substance, that the de-
fendants are entitled to the possession of the vein
or ·lode in dispute in this action, opened up and
disclosed within the side lines of the Hecla and
Shamrock claims as a vein or lode apexing within
the lines of the Grand Trunk lode and a part there-
of, the defendants, W. B. Brown and Edward Brown,
being so entitled as the owners thereof, and that
plaintiff has no right, title or interest therein what-
ever. It was further adjudged, that said vein is in
fact the Grand Trunk vein, belonging to and hav-
ing its apex upon the Grand Trunk lode, and that
the title, rights and interests of the defendants are
hereby quieted and confirmed as against the said
plaintiff, and all persons claiming under him, and
that said plaintiff, his agents, servants and attor-

neys are hereby enjoined and restrained from asserting or claiming any right, title or interest in said vein, or in any ore taken from said vein, and from in any manner interfering with said defendants or their heirs or assigns, or any of them, in their working of said vein or lode upon the dip thereof, or in the extraction, treatment, sale 'or disposal of ore therefrom, unless it shall hereafter be shown that the apex of said vein departs from the Grand Trunk claim, in which event the plaintiff shall have leave to apply for a modification of this order, and decree to the extent owned by such departure.

The case was thereupon appealed to the supreme court and is now before this court for review. Before the case was submitted to the jury plaintiff moved for a directed verdict upon the ground that defendants had not proved any continuous vein or body of ore from the ground of defendants into the patented ground of plaintiff, within the meaning of the acts of congress, and that the continuity and dip were not established by competent or any testimony.

The following instruction is likewise complained of: "The jury are instructed that in determining whether a vein is continuous in its downward course, it is not necessary that the vein should be opened up or disclosed for the entire distance, but you must take into consideration all the facts shown as to the dip or incline of the vein, its geological and mineral character, and of the walls, and from the whole evidence decide whether it is the same vein in fact."

It was agreed that plaintiff was the owner of

the Australian, the Shamrock and the Hecla lodes,
and that the defendants were the owners and les-
sees of the Grand Trunk lode; that the ore being
removed, and the workings in dispute, are within
the lines of the Hecla, and between which and the
Grand Trunk lie the Shamrock and the Australian,
is likewise admitted. So that the claim of the de-
fendants in this case arises solely upon their con-
tention that the vein so being worked in the Hecla,
apexes in the Grand Trunk. The errors assigned
and which seem necessary to consider are (a) the
refusal of the court to direct a verdict for the plain-
tiff, (b) the order of the court allowing defendants
to file an amended answer to conform to the proof,
(c) the giving of the instruction to the jury here-
tofore set out, over the objection of the plaintiff.

It will be seen that the answer of the defendants
upon which the case was tried was simply the denial
of ownership and the right to possession by plaintiff
of the lode claims set out in the complaint. While
the amended answer permitted to be filed after ver-
dict was returned, set up an affirmative claim to the
vein, admitted to be within the plaintiff's ground,
by reason of defendant's claim of apex right. This
was a new and different cause of action from that
set up in the original answer, and upon which the
case was tried.

The appellate courts of this state have been lib-
eral in the matter of the allowance of amendments
to pleadings, and particularly so as applied to an-
swers. In the case of *Cartwright v. Ruffin,* 43 Colo.,
377, it was held that amendments to pleadings are
largely in the discretion of the trial judge, and un-
less clearly abused, such discretion ordinarily will

not be interfered with on appeal. It was there further held that greater liberality is necessarily allowed in the matter of amendments to answers than to complaints, especially under code practice, and that this liberality is some times extended to the admission of entirely new defenses.

While the question of the amendment presented for consideration in that case was not determined, yet it was characterized as radical. Neither do we find it necessary to determine whether or not the amended pleading in this case, as such, was allowable. Yet in view of the finding hereinafter stated, as to the failure of proof upon the part of the defendants, we hold that for such reason the amendment was not proper.

But if the amended pleading be considered as permissible and within the discretion of the court, then under the practice, it was the duty of the court in this case to have granted a new trial, and to have thus permitted the parties to try the case upon the new pleadings.

"At common law the court has power to allow an amendment of the pleadings in a case until final judgment; and authority is given by statute in most of the states to allow amendments after as well as before judgment by the insertion of new allegations material to the case. Although this is an extraordinary power and should be sparingly exercised, amendments have been allowed under special circumstances even after satisfaction of the judgment. If the amendment is allowed, the judgment should be vacated in order to give the opposite party an opportunity to controvert the new allegations;

FIGURE 1.

FIGURE 2.

or a separate trial should be had upon the new issues.'' 1 Am. & Eng. Enc. Pl. & Pr., 605, 606, 607.

Therefore the refusal of the court to grant a new trial after allowing the amended answer to be filed, and thus to permit the case to be tried upon the pleadings as amended, was error. The verdict and the judgment were wholly at variance with the defendant's pleadings upon which the case was tried, and it has been held that the judgment obtained through a clear departure from the issues joined, cannot be sustained. *Jackson v. Ackroyd,* 15 Colo., 583.

The court's action in allowing the amendment was also in violation of the code provision requiring a showing to be made.—Mills' Ann. Code, sec. 75. The motion for a new trial should have been granted.

From what has been said the judgment should be reversed; but, inasmuch as the case may be again tried, it seems proper to consider the remaining questions. From a careful study of the record it seems quite clear that there was a failure of proof as to the defendant's claim of apex right. In order to understand the issue it will be necessary to consider the following sketches, to which we will refer as figures 1 and 2, respectively. Figure 1 shows the surface lines and location of the lode claims involved. It also shows the line of the tunnel and the location of the shaft, also the workings on the Grand Trunk lode, referred to in the record as the ''upper tunnel.'' Figure 2 is intended as a sectional view showing the shaft on the Grand Trunk sunk a short distance below the level of the upper tunnel, which last appears to be about 30 feet below

the surface, and also shows what is known as the
"up-raise" in the lower tunnel on the Hecla claim,
as well as the supposed course of the vein between
these points, an estimated vertical distance of 550
feet, all of which was wholly uncovered and unex-
plored.

The shaft on the Grand Trunk is testified to by
the defendant Bailey as extending about 50 feet
below the level of the upper tunnel, but by reason
of water therein, not examined by other witnesses.
The up-raise in the Hecla is estimated to be about
45 feet vertically upward from the level of the
lower tunnel, but constructed through the ore in a
sort of circular stairway form, reaching and ex-
posing a small portion of both walls, but always at
different places. Bailey testifies that the shaft
from the tunnel level in the Grand Trunk, follows
the dip of a vein to the bottom of the shaft. These
maps, and the record, except as to figure 1 where
the surface lines are from actual survey, are made
from alleged surveys of others, not in evidence, and
the seeming guess and speculation of the makers
of the maps. The dip of the vein in the Hecla, as
far as exposed, seems to compare with the dip of
the vein, so far as disclosed, in the Grand Trunk,
but there seems to be so little of either vein ex-
posed that estimates in that regard are, of neces-
sity, largely conjectural. The character of the ore
in the Grand Trunk tunnel is said to be the same
as that in the lower tunnel, except that the ore in
the Grand Trunk is oxidized. The witness, Boeh-
mer, for the defendants, says that he also bases his
opinion that the vein disclosed on the Hecla and
that appearing on the Grand Trunk, are one and the

same vein, because of a dyke running through the mountain, paralleling the supposed vein, and he designates this formation as mica-schist, gneiss and granite, as indicated in figure 2. But where one of these formations begins and another ends is no clearer in the testimony than it appears in the map. Besides, there is no evidence as to the dyke in the several formations suggested, except as it may appear in the lower tunnel. It is true that Bailey says that the vein as disclosed in the Grand Trunk and in the Hecla is the only vein on the mountain; but the witness, Horace Havens, testifies as to the Pelican and Pelican Extension veins, which show on the surface for a thousand or fifteen hundred feet, and that the Mollie vein has always been considered by those operating it as one of the strongest veins in that country. These veins are all in the same mountain as the ground in dispute. Havens further testifies that he had worked in all of these veins and was familiar with the ores in them; and that they were of the same character as that in the Hecla. He further testifies that all of these veins are of the same general dip and strike as those in the Hecla and Grand Trunk. Havens is corroborated in this testimony by the witness Happel, who testifies he has worked on his own claims, the Three Nations and the Mack, also the Virginian, Grand Trunk, Pelican, Comstock and Great Western, all in the same locality, and that the veins are all similar, having the same character of ore, the same character of walls, and all about of the same dip. This, with other testimony in the case, seems to make the declaration of Bailey that there are no other veins in that mountain, appear absurd. Boehmer, the en-

gineer, testifying for the defendants, on cross-examination, says:

Q. Why did you mark this lower tunnel, when, as a matter of fact, the lower tunnel is two or three hundred feet away? A. It is projected on. That dotting is on there to show that.

Q. Why did you change the course and dimensions of that streak? A. I platted that from the dips that I took in the lower level, the average was 67 degrees. I drew that line 67 degrees, and the upper one I found 65 degrees, and I started that from the upper workings and then connected with an irregular line.

Q. Had you projected with the 67 degrees, it would come out in the Australian? A. Yes, if that line was projected it would come out in the Australian.

Q. So if you take the dip of the vein, as shown in the lower workings, and project that to the surface, with that same angle, it would come out in the Australian? A. Yes, it would.

Q. And not on the Grand Trunk, at all? A. Yes, sir.

Q. When you got about here to this line, between the Shamrock and the Australian, then you commenced to give off towards the Grand Trunk? A. Yes, sir.

Q. Why? A. Because the vein up there is within the Grand Trunk, and not the Australian, and you have to connect vein with vein, and could not connect any dip you happen to find.

Q. In other words, you must connect whether it is solid rock or not? A. Yes, sir, you must connect vein with vein.

Q. Did you go up here to examine and find if there was a vein on the surface? A. No, I couldn't see anything there.

Q. Then the upper exhibit is conjecture beyond the end of the drift so far as the lower tunnel is concerned, and conjecture so far as the upper tunnel is concerned down this way to the east? A. No, not the upper one. That is put on by the evidence of Mr. Bailey. I didn't see that myself.

Q. So far as you are concerned. A. So far as I am concerned, yes.

Q. Why didn't you take Mr. Bailey's word for this up-raise in the lower tunnel workings? A. I could get at that."—Transcript of Record, folios 182, 183, 184.

This testimony shows clearly that if the vein continued on the angle of the dip estimated by the witness as being the angle in the lower tunnel, the vein would come to the surface on the Australian, and not on the Grand Trunk, as contended by the defendants. It likewise discloses the uncertainty of his information upon which he relied to make the map, figure 2. This witness also testifies, and there seems to be no other contention, that the top of the up-raise in the Hecla is 550 feet lower, vertically, than the bottom of the Grand Trunk shaft, and also 300 feet distant, at right angles, from the bottom of the Grand Trunk shaft, as well as 200 feet nearer the southerly end lines of the claims. It will be seen that if this is a fair statement of the substance of the testimony the conclusion that the workings in the Hecla are in the vein said to apex in the Grand Trunk, is the result simply of conjecture and speculation; and, considered in its most fa-

vorable light for the defendants, is not sufficient upon which to base a verdict and judgment in their favor.

Section 2322 Rev. Stat. U. S. conferring what is commonly known as the apex right, is in derogation of the common law which granted to the owner of lands all veins within the vertical lines of his land to the center of the earth, and it has been generally held in the determination of cases under this statute, that the presumption is with the owner of the lands as to his right to veins and ore bodies within his vertical side lines.

It was said in *Stevens v. Gill*, 23 Fed. Cas., No. 13398, that "the burden of proof is upon the plaintiffs claiming the apex, both because they are the plaintiffs, and because they are seeking to go out of their own territory into that of others." This seems to be the universally accepted rule of appellate courts including our own. Again, to establish such a claim, and from the very nature of the case, there should be at least a reasonable degree of certainty in the proof.

The following statement of the rule is perhaps as fair as can be selected from the reported cases in this regard:

"The act of congress, sec. 2322 Rev. St., gives to the owner of a mineral vein or lode, not only all that is covered by the surface lines of his established claim as those lines are extended vertically, but it gives him the right to possess and enjoy that lode or vein by following it when it passes outside of those vertical lines laterally. But this right is dependent, outside of the lateral limits of the claim, upon its being the same vein as that within those

limits. For the exercise of this right it must appear that the vein outside is identical with and a continuation of the one inside those lines. But if the mineral disappears or the fissure with its walls of the same rock disappears, so that its identity can no longer be traced, the right to pursue it outside of the perpendicular lines of claimants' survey is gone.'' *Iron Silver Min. Co. v. Cheesman*, 116 U. S., 529.

To say then in this case, that the alleged apex on the Grand Trunk is that of the vein appearing on the Hecla at a wholly unexplored distance of 550 feet, with a right angle distance of 300 feet, and an additional extended distance lengthwise of the claims 200 feet, is to base such conclusion upon mere speculation.

Particularly is this true in the light of the scant development at either point, and the slight and uncertain evidence as to the formation. Thus by these figures of the engineer from a point at the bottom of the shaft on the Grand Trunk to a point at the top of the up-raise from the tunnel in the Hecla would be in a straight line through the earth a distance of approximately 657 feet, all of which is unopened, unexplored and the character of which is wholly unknown. To conclude under this state of facts that this distance is traversed by a single continuous vein of which these two points are the only opened and exposed parts, is little short of absurd.

We can find no case wherein such a wild guess has been accepted as proof. In fact the most that can be said in favor of such a conclusion is that it is the opinion of an engineer. But in view of the many worked and ore bearing veins in the same lo-

cality, on the same mountain, with similar dip and strike, this opinion can be regarded as but little if anything beyond a guess and mining engineers cannot be said to be infallable as guessers.

It was said in *Heinze et al. v. B. & M. Co.*, 30 Mont., 485:

"The plaintiffs have not by their operations so developed their own workings from the apex of their vein down to the disputed territory as to furnish substantial evidence that their claim is probably well founded. Indeed, while they concede that there is a vein in the defendant's ground dipping to the south, their own contention is based exclusively upon the opinion of their engineers that, if the vein having its apex in the Minnie Healy ground continues to dip at the same angle from certain points where it is exposed in the upper levels in their workings, it will reach the point where the defendant is conducting its operations. This is not sufficient to overcome the presumption that the defendant owns the ores found beneath its own surface. This presumption may not be overturned by speculative conjecture or even intelligent guess."

As we read the facts in the case of *Colo. Cent. Con. Min. Co. v. Turck*, 50 Fed., 888, they were much more favorable to the apex claimant in that case insufficient upon which to base a verdict and judgthan in the case at bar. And the testimony was there held to be mere speculation. The proof was insufficient upon which to base a verdict and judgment.

The instruction complained of was misleading, if not erroneous in this case. It might have been allowable in a case where a vein had been opened

and identified for substantial distances and at points in close proximity, but even in that case it should have been qualified and amplified so as to permit a finding based only upon a state of facts sufficient to reasonably justify such a conclusion. It should have denied the right of the jury to guess, speculate or conjecture.

Judgment reversed.

All the judges concurring.

Decided April 8, A. D. 1912. Rehearing denied June 10, A. D. 1912.