[No. 15719.   Department One.—April 27, 1895.]
THE CITY OF EUREKA, RESPONDENT, v. LURA A.
FAY ET AL., APPELLANTS.

DEDICATION OF STREET — UNAUTHORIZED MAP — FINDING AGAINST EVI-
DENCE.—Where a survey and map of an addition to a city, showing
public streets, included a tract of land owned by one who had no con-
nection with, and did not authorize, the survey or map, and who pro-
tested against the map, and prevented the recording of it, a finding
that he dedicated, or offered to dedicate, any part of a street designated
thereon, and extending through his land, is against the evidence, not-
withstanding the fact that in two conveyances of portions of his land
he referred to the unrecorded map for a description of the lots con-
veyed, neither of which adjoined or referred to the street.

ID.—EFFECT OF REFERENCE TO MAP—EVIDENCE—INTENTION TO DEDI-
CATE.—The reference to the unrecorded map for the mere purpose of
describing lots sold by the owner who had not authorized the map,
while expressly repudiating it for all other purposes, and preventing
the recordation thereof, has no tendency to prove that he intended to
dedicate to the public any part of a street defined on such map, not
adjacent to the lots sold, nor referred to in the description thereof.

ID.—ESTOPPEL—ACCEPTANCE OF STREETS BY ORDINANCE.—The acceptance
by a general ordinance of all offers to dedicate streets not passed in
reliance upon any representation by word or act of the owner of the
land in question, and not referring nor applying to that land by descrip-
tion, cannot estop the owner from claiming his ownership of the land
which he had not offered or intended to dedicate before the passage of
the ordinance, merely because he had described lots by reference to an
unrecorded map of which the city had no constructive notice at the
date of the ordinance.

ID.—EVIDENCE — DEDICATION BY OWNER — CONVEYANCE BY ADMINISTRA-
TOR—ACQUIESCENCE IN DEDICATION—PARTIES.—In an action by a city
to recover a portion of land claimed to have been dedicated as a street,
where the evidence shows that a portion of the land was dedicated as
a street by the owner, and accepted by the city during his lifetime,
proof is admissible of a deed by his administrator to a third party, and
that such third party acquiesced in the dedication by his grantor, and
had sold lots bounded by the street in question, and it is not a valid
objection to such proof that the grantee and the heirs of the decedent
were not parties to the action, the plaintiff not being bound to make all
persons from whom it deraigned title parties defendant.

APPEAL from a judgment of the Superior Court of
Humboldt County.

The facts are stated in the opinion.

*J. E. H. Chamberlin*, for Appellants.

The verdict is not supported by the evidence, as there is absolutely no evidence of a dedication of the land in question, or of any intention on the part of its owner to dedicate it, to public use as a street, and this intention is essential to a dedication. (*Hogue* v. *City of Albina*, 20 Or. 182; *City of Eureka* v. *Croghan*, 81 Cal. 524; *Harding* v. *Jasper*, 14 Cal. 643; *People* v. *Reed*, 81 Cal. 76; 15 Am. St. Rep. 22.) The claim that Raymond offered to dedicate this land to the city, because he made certain deeds of portions of his tract in which he referred to the map, is without merit, as the survey or map was never made by Raymond, who repudiated the map many times, and refused to allow Duff to record it, and the map was never recorded. (*People* v. *Reed, supra; City of Eureka* v. *Croghan, supra; Whitworth* v. *Berry*, 69 Miss. 882; *Cerf* v. *Pfleging*, 94 Cal. 131; *In re Beach Avenue*, 24 N. Y. Supp. 37; *Phillips* v. *St. Clair etc. Co.*, 153 Pa. St. 230; *Burrows* v. *Webster*, 21 N. Y. Supp. 828.)

*J. N. Gillett*, for Respondent.

By the reference in Mr. Raymond's deed to the map showing the streets in question he adopted the map, and his act in so doing amounted to a dedication of the land therein designated as a street. (*City of Eureka* v. *Armstrong*, 83 Cal. 623; *Archer* v. *Salinas City*, 93 Cal. 43; *Kittle* v. *Pfeiffer*, 22 Cal. 490; *Lamar* v. *Clements*, 49 Tex. 347; *Giffen* v. *City of Olathe*, 44 Kan. 342; 5 Am. & Eng. Ency. of Law.) The acts of Raymond were, at least, an offer to dedicate the land, and the ordinance of the city in relation thereto amounted to an acceptance of such dedication. (*City of Eureka* v. *Armstrong, supra.*) The fact that the map was made by some other person than Raymond is immaterial. (*City of Eureka* v. *Armstrong, supra; Ricks* v. *Lindsay* (Cal., Oct. 29, 1892), 31 Pac. Rep. 262.)

VANCLIEF, C.—The plaintiff, a municipal corporation, brought this action to recover possession of a strip

of land alleged to be a portion of Sixth street in said city. The cause was tried by a jury, whose verdict was in favor of plaintiff, and judgment was rendered thereon. The defendants have appealed from the judgment.

The plaintiff claims title to the demanded premises by dedication, partly from Charles Raymond and partly from Richard Duff; while defendants claim the whole premises by conveyance from Charles Raymond; and the principal and controlling questions relate to the sufficiency of the alleged dedications.

1. In October, 1864, Raymond owned a lot of land adjoining the town of Eureka, containing about twelve acres, and on the twentieth day of that month conveyed to Charles Duff two distinct parcels thereof, and retaining a strip between these parcels of eighty feet in width; and on January 30, 1872, Charles Duff conveyed these two parcels to Richard Duff. Some time in 1873, while the two parcels and Raymond's strip were inclosed as one tract, Richard Duff procured the whole to be surveyed and divided into blocks and lots as an addition to the city of Eureka, and a map thereof to be made by R. F. Herrick, who, as a witness for plaintiff, testified as follows:

" By occupation I am a surveyor. [Map introduced in evidence shown witness, and he is asked if he ever saw it before.]

"A. Yes; I made that map in 1873. I made it at the instance of Richard Duff. It covers the Duff tract, a tract of land that Richard Duff owned at that time. It also covered land which was owned by Charles Raymond. I made a survey of the ground. I drove stakes for the most of it, locating the blocks, but I don't know whether I drove stakes for the lots or not; but I did drive stakes for the corners of the blocks. I think I drove stakes for the block marked on this map, as bounded on the north by Sixth street, on the east by A street, on the south by Seventh street, and on the west by California street. This California street, running through the center, represents a street in Clark's addi-

tion that joins on.   The streets marked out on this map are continuations of streets in the city of Eureka.   I made my survey to conform to those streets.   They are simply continuations or elongations of those streets."

Upon his cross-examination he said:

"The lands lying between these two red lines marked upon the map were the lands of Charles Raymond. Raymond held those lands between those two red lines in one body.   I could not well make a map of the Duff and Raymond track for Richard Duff without including that land.   Charles Raymond did not have any thing to do with the survey of the land or the making of the map.   He was around there part of the time I was surveying it.   I think he saw me setting stakes there upon corners of the blocks.   He lived right there upon the premises at that time.   He knew I was surveying the land for Richard Duff.   The Duff and Raymond tracts, at the time the survey was made, were all fenced in one body and so remained for several years afterward."

The map shows but few whole lots on Raymond's land.   In "block 2," composed of eight lots, there are five fractional lots on his land which are either triangular or quintangular.   The evidence, without conflict, shows that Raymond frequently protested against the map, saying he would not be bound by it; and that he prevented the recording of the map, and it never was recorded.   The evidence also shows that Raymond's land through which Sixth street was extended by the survey has always been inclosed by fences, and the bill of exceptions contains the following: "It is admitted that the plaintiff never opened the alleged street in controversy, or worked it, nor have the said premises ever been open to public use, nor has the plaintiff ever accepted the said alleged dedication, or offer to dedicate, otherwise than by ordinance No. 88."   This ordinance was passed April 7, 1885, and is as follows:

"Section 1.   All streets and alleys within the corporate limits of the city of Eureka which have been dedicated by the owners thereof to the use of the public are hereby

accepted and declared to be public streets of the city of Eureka."

The only ground upon which it is claimed by respondent that Raymond ever dedicated, or offered to dedicate, any part of Sixth street through his land is, that in two conveyances of portions of his land he referred to said map for a description of the lots conveyed; but neither of the lots so described adjoined Sixth street, nor was Sixth street referred to or mentioned in either of the descriptions. The conveyance principally relied upon is that of Raymond to W. C. Espie, dated March 23, 1885, and recorded April 8, 1885, one day after the passage of ordinance No. 88, in which the land conveyed is described as " lots five and six in block two, according to the map or plat of that certain addition to the city of Eureka known as the Duff & Raymond tract." The scrivener who wrote this deed testified that the description was dictated by Raymond, who pointed out the lots on a tracing of the map then in the possession of Mr. Randall, who then claimed the Duff interest in the tract, and in whose employ the scrivener was at the time he wrote the deed.

On cross-examination the scrivener (Mr. Murray) further testified as follows:

" In this interview, when you drew this deed for Espie, or at any other interviews, and when you were having business relating to this map or plat, did Mr. Raymond say he would not be bound by this plat? Repudiate that plat? A. Yes, sir; he did.

" Q. Did he, in any of these interviews, refuse to permit this plat to be filed ? A. He did.

"Q. At that time this plat was in Mr. Randall's hands? A. Yes, sir. And Mr. Randall was selling lots out of his portion of the Duff and Raymond tract.

" Q. Was or was not Mr. Raymond's protest the reason why this map was not filed ? A. It was. I have heard this protest against this map from Mr. Raymond several times, but I cannot specify the dates. Mr. Raymond was living on the tract at the time. He knew

that the map was designated as the Duff and Raymond map, and he pointed out to me on that map the lots that he wanted to transfer."

The other conveyance by Raymond was to Thomas Blakewell, dated in June, 1882, in which the lot was described as follows: "Beginning at the northwest corner of Seventh and A streets in the city of Eureka, running thence north along the west side of A street sixty (60) feet; thence west parallel with Seventh street one hundred and ten (110) feet to an alley; thence south along the east side of said alley sixty (60) feet to Seventh street; thence east along the north side of Seventh street one hundred and ten (110) feet to the place of beginning; being lot number four (4) in block two (2)."

The deed from Raymond to the defendant, Lura A. Fay, under which defendants claim, was executed June 24, 1887, more than two years after the passage of the ordinance of acceptance (No. 88); and surely this deed evinces no intention to dedicate any part of Sixth street, but the contrary; since it purports to convey that part of the street in question. And, even if it could be construed to be an offer to dedicate, there is no evidence of acceptance by the city or the public.

It is, therefore, clear that the evidence does not justify the verdict to the effect that Raymond ever dedicated, or offered to dedicate, to the public any part of Sixth street.

The reference to the Duff map by Raymond for the mere purpose of describing lots sold by him, while expressly repudiating it for all other purposes and preventing the recordation thereof, has no substantial tendency to prove that he intended to dedicate to the public any part of a street defined on such map not adjacent to the lots sold nor referred to in the description thereof. (*Cerf* v. *Pfleging,* 94 Cal. 131; *People* v. *Reed,* 81 Cal. 70; 15 Am. St. Rep. 22; *Phillips* v. *Day,* 82 Cal. 30.) None of the cases cited by respondent go to the extent necessary to sustain this as sufficient evi-

dence of intention to dedicate any part of Sixth street. This case is clearly distinguishable from that class of cases in which the grantor of lots has been estopped, in favor of his grantee, from claiming as his private property the streets or parks by which he expressly bounded such lots. The record shows no ground of estoppel in this case; for it does not appear that the city council had even constructive notice of the Duff map at the date of its general ordinance of acceptance of all offers to dedicate streets, etc; nor that it passed said ordiance in reliance upon any representation, by word or act, of Raymond. That ordinance had no reference nor application to the land in question, unless, before its passage, Raymond had offered to dedicate that land to the public. So that the controversy is reduced to the question whether Raymond had offered to dedicate the demanded premises before the passage of ordinance No. 88; and surely the evidence was insufficient to prove that he had.

2. As to the alleged dedication of a distinct part of the demanded premises by Richard Duff, it is to be remarked that about two-fifths of said premises lie northeast of and adjoin the northeastly side of Raymond's strip of land, and within the boundaries of the northeast parcel conveyed, as aforesaid, by Raymond to Charles Duff, and by the latter to Richard Duff, and which was owned by Richard Duff at the time he caused the survey and map to be made by Herrick. And, although the deed from Raymond to the defendant, Lura A. Fay, purports to convey the whole of the demanded premises, there is no evidence tending to prove a deraignment of title to that part thereof which is shown to have been owned by Richard Duff at the time he made the survey and map, from Richard Duff to either of the defendants. On the contrary, it appears that the administrator of the estate of Richard Duff conveyed it to Randall by the following description:

" All those lots, blocks, and parts of lots lying in the Duff & Raymond addition to the town, now city, of

Eureka, in Humboldt county, state of California, numbered and described by reference to the plat thereof made by R. F. Herrick, as follows: All of lots number one (1), two (2), three (3), four (4), and seven (7) in block one (1), and that portion of lots number five (5) and six (6) in block one (1), and lots one (1) and two (2) in block two (2) lying northwest from the red line on said plat marking the northwest boundary of that portion of said addition belonging to Charles Raymond; also, that portion of lots number four (4), five (5), six (6), and seven (7) in block two (2), and lot one (1) in block five (5), lying southerly of the red line on said plat, marking the southerly boundary of that portion of said addition belonging to said Raymond."

The defendants objected to this deed on the grounds that an administrator has no power to dedicate the land of his intestate; that defendants are not bound by the acts of Duff's administrator, and that neither Randall nor the heirs of Richard Duff are parties to the action.

Conceding that the administrator had no power to dedicate, I think the deed was competent and relevant to show that Duff's title had passed directly to Randall before the commencement of this action, thus laying the foundation for evidence, either that Randall had dedicated, or that he had acquiesced in the dedicatory acts of his grantor, and completed them in case the dedication had not been completed in the lifetime of the latter; and, for these purposes, the introduction of the administrator's deed was followed by evidence tending to prove that Randall had at least acquiesced in all the dedicatory acts of Duff.  He had accepted a conveyance of the *lots* merely, as described on the map made by Duff.  He sold many of those lots, designating them by the numbers on said map, and describing them as bounded by the streets as laid out on the map; and in two instances referred to Sixth street, and in one case described the lot sold as bounded on one side by Sixth street.  The map was in his possession, and according to the testimony of his clerk (Mr. Murray) above quoted,

he was selling lots from his portion of the tract in March, 1885, before the passage of the ordinance of acceptance.

Nor was it a valid objection to the administrator's deed that Randall and the heirs of Richard Duff were not parties to the action. The plaintiff was not required to make all persons through whom it deraigned its title parties defendant. If either Richard Duff or Randall dedicated that part of the land in question situate northeast of the red lines on the map plaintiff's chain of title thereto from the highest source was unbroken and complete, and shows that Raymond and wife, the grantors of the defendant, Lura A. Fay, had no title thereto at the date (June 24, 1887) of their deed to her; and there is no evidence that they ever acquired any title thereto afterward.

I think, however, that the evidence was sufficient to justify the jury in finding an offer to dedicate by Richard Duff and an acceptance thereof by the city during his lifetime, especially as against the defendants, who appear to have no title. I perceive no reason to doubt that Richard Duff intended to dedicate, and intended his acts as an offer to dedicate. He would have recorded his map but for the opposition of Raymond.

As to that part of the demanded premises situate between the two red lines on the map, I think the judgment should be reversed and a new trial granted; but as to that part of said premises lying northeast of said red lines, and not between them, I think the order and judgment should be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the order and judgment are reversed and a new trial granted as to all that part of the demanded premises described as situate between the two red lines on the map; but as to the remainder of said premises lying northeasterly from said red lines, the order and judgment are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.