[Civ. No. 1065. Fourth Appellate District.—August 10, 1933.]

COLEMAN M. GRAY, Respondent, v. HUGH MAGEE et al., Appellants.

Estudillo & Schwinn and A. M. Thompson for Appellants.

George H. Stone for Respondent.

BARNARD, P. J.—Victoria P. de Magee, who died in 1886, left as a part of her estate a mountain ranch consisting of several hundred acres, only a part of which is tillable land. Her estate has never been closed and Hugh Magee, as one of the executors, has been in personal charge of these lands since 1913. He is also the owner of a tract of several hundred acres of land immediately adjoining the estate lands on the west. There is an old adobe house on the estate lands, some 300 or 400 feet easterly from the private land of Hugh Magee, which was erected there some years before these lands were acquired by Victoria P. de Magee. Between 1911 and 1913 . Hugh Magee built a barn on his own land near the west line of the estate land and a few hundred feet northeasterly of the adobe house, and in 1927 or 1928 he built a house near this barn.

In 1924 the plaintiff established a home on a portion of the Hugh Magee land referred to, under some arrangement with him, doing some clearing and irrigating, as well as erecting several buildings. At that time he entered by following a road over the estate lands past the adobe house to the Hugh Magee barn and thence over the Hugh Magee

land in a southerly direction to the site of his home. In 1927, at the suggestion of Hugh Magee, the plaintiff improved a road westerly from his home site across the estate lands to a point on the road by which he had formerly entered which is somewhat southwesterly from the old adobe house. This short piece of road improved by the plaintiff will be hereinafter referred to as the "Gray" road. In July, 1928, Hugh Magee conveyed by deed to the plaintiff twenty-five acres of his private land, upon a part of which the plaintiff had established his home, and during the same year one of the executors and some of the heirs of the Magee estate took measures to prevent the plaintiff from using the Gray road. The plaintiff then brought an action, one purpose of which was to establish the location of the Gray road as a public road. On appeal this court affirmed a decree to the effect that the Gray road was not a public road and prohibiting the plaintiff from using the same (*Gray* v. *Magee,* 108 Cal. App. 570 [292 Pac. 157]). The present action was started in November, 1930, after the decree in the case referred to became final.

In this action the plaintiff is seeking to establish a way of necessity over the lands of his grantor, Hugh Magee, to connect with what is claimed to be a public road at a point near the barn above referred to. As a part of his case the plaintiff also seeks to establish that a public road exists at the point near this barn, being the westerly end of the way of necessity, and for that purpose the executors of the estate and other individuals were joined as defendants since the road relied upon as a public road runs across their respective lands. At the trial little, if any, defense was made as to the way of necessity across the lands of Hugh Magee in itself, and the entire controversy centers upon whether this way of necessity reaches a public road; in other words, whether there is a public road across the Magee estate lands which meets the way of necessity at Hugh Magee's barn. The trial court found in all respects for the plaintiff and the defendants have appealed.

The main contention of the appellants is that the evidence does not support the findings to the effect that a public road exists across the estate lands and touches the way of necessity at the barn. More than a hundred witnesses were examined and the transcript contains more than

2,000 pages, including two large volumes of exhibits. The printed briefs contain more than 1,000 pages, the greater portion thereof being devoted to quoting, summarizing and marshaling portions of the evidence in accordance with the points of view of respective counsel. It would serve no useful purpose and would require an unwarranted amount of time and space to analyze this evidence in detail, and we shall make only the most general references thereto. No more appears than a conflict in the evidence the great preponderance whereof, in our opinion, sustains the findings and judgment. In general, the appellants' contentions as to the evidence may be thus summarized: that the roads shown to have long existed over the estate lands were private roads for the use and benefit of the estate; that any use of such roads by outsiders was casual and permissive only; that certain changes in the location of portions of the road were made by the executors solely for the benefit of the estate; and that no public road has ever extended to any part of the private land of Hugh Magee.

There is overwhelming evidence that a road has existed across the estate lands since many years before the same were acquired by Victoria P. de Magee, and that until about 1875 this was the only road between Pala, to the south of these lands, and Temecula and Pechanga to the north. While after that date another more direct road between Pala and Temecula was established some miles to the west, this road across these lands has remained the only road to Pechanga. There is evidence that this road was used by the Indians as early as 1846 for the purpose of hauling lime from Pechanga to Pala, and direct testimony of its use for hauling and general traffic during nearly every year from 1862 to 1875, and during practically every year from 1875 to 1930, when this action was brought. Nearly a hundred witnesses testified to such use, some limiting their testimony to one or two years while others covered many years, and these same witnesses testified to having seen literally hundreds of other people use the road over a period of many years. The appellants take exception to the testimony of some of these witnesses, claiming that the same does not establish adverse use of the road. While it is true that certain items of evidence may not be sufficient, standing alone, all of the evidence must be taken together and each part

has its place in the composite whole. A number of maps were introduced in evidence, including one prepared by the surveyor-general of California in 1875; one by the surveyor-general of California in 1880; one by the surveyor-general in 1886; a land office plat published in 1892; a United States topographical map of the quadrangle in which this land is situated, prepared from surveys made in 1891 and 1898; a land office map prepared in 1913 from a resurvey; and a map of San Diego County published in 1931. All of these maps indicate a road running from Pala across these estate lands and in the direction of Pechanga and Temecula. The respondent introduced in evidence copies of government records showing original homestead entries and final proofs in a dozen cases relating to lands in the immediate vicinity of the lands here in question. In some cases there is evidence that these homesteads were occupied by several successive homesteaders or vendees. A natural inference is to be drawn that these parties, while living upon and proving up on their homesteads, used some road to get to the outside world. Other evidence in the record plainly indicates that the only road they could have used is the one in question across these estate lands, and there is some direct testimony to that effect. In addition, the trial judge visited the lands in question and went over the points in controversy on two occasions during the trial. What he there observed is to be considered as evidence in the case. (*People* v. *Milner*, 122 Cal. 171 [54 Pac. 833]; *Hatton* v. *Gregg*, 4 Cal. App. 537 [88 Pac. 592]; *Wright* v. *Locomobile Co.*, 33 Cal. App. 694 [167 Pac. 407]; *Vaughan* v. *County of Tulare*, 56 Cal. App. 261 [205 Pac. 21]; *MacPherson* v. *West Coast Transit Co.*, 94 Cal. App. 463 [271 Pac. 509].) It was thoroughly established by the evidence that a road continuously existed across these estate lands from a date long prior to the time they were acquired by Mrs. de Magee to the time of the trial, and that throughout a period of some seventy years the same was used by the general public having occasion to use such a road without objection from anyone.

Coming to the more specific question as to the location of this road as it crossed the estate lands during various periods of time, it fully appears that before these lands were acquired by Victoria P. de Magee and during most of the time she occupied the same, this road crossed what is

known as "Milkhouse" canyon and passed over what was called the "Colorado Mesa", about 3,600 feet westerly from the Hugh Magee land and some 3,000 feet west of the old adobe house. It appears that this crossing through the canyon was washed out and rendered impassable in 1884 and that in that year or the next, and either one or two years before Victoria P. de Magee died, the location of this part of the road across the estate lands was changed by making a new crossing over the canyon at a point considerably nearer what is now Hugh Magee's land, and connecting the same with the other road at a point some 400 feet northwesterly from the old adobe house. It further appears that the last-mentioned crossing over the canyon was washed out by floods in 1916 and that Hugh Magee, who was living on his land and caring for the estate lands, then put in a new crossing at a point still nearer his land, running this part of the road a few hundred feet easterly to his barn, then a few hundred feet southwesterly to the old adobe house, and connecting with the old road a few hundred feet farther on. There is an abundance of evidence that from 1916 until the time of the trial this road ran past the old adobe house on up through Hugh Magee's barnyard and then northwesterly across the canyon and on toward Pechanga. It is undisputed that Hugh Magee's barn was upon his own land although it was near the line between his and the estate land. In 1927 or 1928, the Southern Sierra Power Company used the road here in question in connection with some work it was doing farther up in the mountains and, in order to avoid some sharper turns, constructed a new cutoff from a point a little northwest of the old adobe house to a point a few feet westerly from Hugh Magee's barn. The appellants strenuously maintain that this cutoff was in fact the road used by the public and that the slightly longer road, by the old house and the barn, was used only by the family. However, there is abundant evidence that this cutoff was not opened until 1927 or 1928, and that prior thereto all traffic went over the road by the adobe house and the barn, and there is some testimony that after that short piece of road was constructed a part of the public continued to go over the portion of the road leading by the adobe house and directly to the barn. A number of witnesses testified that between 1916

and 1928 the road from Pala went past the adobe house and on to the barn and then out toward Temecula. Several of these witnesses testified that this was the only road. Not only is there ample evidence that from 1916 to 1928 this road ran past the adobe house and Hugh Magee's barn, but this fact appears from much of the appellants' own evidence and particularly from the testimony of Hugh Magee. He testified that in coming from Pala he had turned to the right toward the old adobe house for more than forty years; that his barn was built in 1911 and rebuilt in 1913.; that the road between the house and the barn has not been changed since 1913; and that a certain party used to come from lands considerably to the north of the estate lands to his house over the same road that runs from his house to Temecula. He admitted that the road from Pala came up to his barn and had since 1916, and that when they went out to Temecula they went on from the barn. He testified that from 1913 to the time he built his new house the only way to get to the homestead and the barnyard was from the old adobe house up to the barn, that he hauled cream from there to Pala and that he also went out from there north toward Pechanga. While this witness maintained that that portion of this road crossing the estate lands was and always had been a private road used only in connection with working the ranch, the court was justified in drawing an entirely different inference from the facts testified to by him, especially when the same is taken in connection with other portions of the evidence. Without reviewing the evidence in any greater detail, it is sufficient to say that it fully supports the findings.

While the appellants rely upon certain conflicting evidence and upon the claim that much of the evidence is unworthy of belief, such matters are for a forum other than this. While there is some evidence that at certain times during these many years gates were found across this road, sometimes not even being closed, there is no evidence that any locked gate was ever found until some time in 1930, after the prior case referred to was affirmed on appeal, and then only near the northerly limits of the estate lands and above the point where the way of necessity connects with the road. There is evidence that the road across the estate lands was a part of a general road some twelve miles in

length and that no objection was made to its use by the public for nearly eighty years. ■ The slight evidence of the presence of unlocked and sometimes open gates at a few scattered times throughout these years on a mountain ranch in a cattle country could not be held sufficient to defeat the rights of the public in and through a road shown to have been used by the public long years before the estate or the deceased acquired the land, and continuously thereafter.

Some thirty assignments of error in ruling upon the admission of evidence are presented by the appellants. Most of these relate to immaterial matters of trifling moment and call for no special attention, especially in view of the liberal cross-examination permitted by the court. The remaining assignments fall into two groups which will be briefly considered. ■ It is contended that the court committed prejudicial error in admitting a number of maps, nearly all of them government maps, all of which were objected to as immaterial and hearsay. It is not only argued that these were inadmissible, but that they could not and did not show any use of the road in question after the year 1916. We think these maps were admissible under section 1936 of the Code of Civil Procedure, and certainly no one piece of evidence is inadmissible merely because it does not prove the entire case of the party offering the same. ■ Complaint is also made of the receipt in evidence of certified copies of government records showing various homestead entries and final proofs in connection therewith. These documents were offered and admitted not as proof of the facts contained therein, but for the purpose of showing that other lands around and above the land here in question had been occupied and settled, and as justifying the inference that such settlers must have used some road in getting to the outside world. The testimony of other witnesses sufficiently indicated that the road here in question was the only one that could have been thus used. We think that this evidence was admissible for the limited purpose for which it was received (*Moody* v. *Peirano,* 4 Cal. App. 411 [88 Pac. 380]; *Lobree* v. *L. E. White Lumber Co.,* 53 Cal. App. 85 [199 Pac. 821]; *Bone* v. *Hayes,* 154 Cal. 759 [99 Pac. 172]). We find no error with respect to the admission of evidence of sufficient importance to justify a reversal.

It is further contended that the executors of the Magee estate could not make a dedication of the estate lands to the use of the public, and that any use of the road shown was both casual and by permission and not sufficient to give to the public an easement over the estate lands. Without doubt, an executor may not make an express dedication as to estate lands, but an easement may arise as to estate lands through implied dedication or prescription. (*Patchett* v. *Pacific Ry. Co.,* 100 Cal. 505 [35 Pac. 73].) Where a road has been in existence over certain lands since long before the same were acquired by a decedent and has continued thereon for a long period of years, greatly in excess of the statutory period, and where the course of such a road over the lands of an estate is re-routed because of washouts and for the greater convenience of the occupants of the land, the mere fact of such a re-routing cannot break the continuity of such a long-established route and cannot be held to prevent the possibility of any right accruing to the public over the relocated portions of the road merely because of the failure to close the estate during a period of nearly fifty years. We may add that, under the circumstances here shown, the burden was upon the appellants to show that the use by the public of the changed routing of the road over a period of many years was not one under a claim of right and adverse to the owners of the land (*Yuba Cons. Goldfields* v. *Hilton,* 16 Cal. App. 228 [116 Pac. 712, 715]; *Costello* v. *Sharp,* 65 Cal. App. 152 [223 Pac. 567]; *Pacific Gas & Electric Co.* v. *Crockett,* 70 Cal. App. 283 [233 Pac. 370]; *Fleming* v. *Howard,* 150 Cal. 28 [87 Pac. 908]). The matters of casual use and claimed permission were questions of fact which have been resolved against the appellants upon sufficient evidence.

It is urged that the court erred in overruling general and special demurrers to the complaint. It is first contended that the complaint does not sufficiently describe the road claimed to exist across the estate lands. The complaint alleges that there is a public road extending from the home of Hugh Magee in a northwesterly direction toward Temecula and in a southerly direction towards Pala, describing the property allegedly owned by the defendants over which the road passes by section, township and range. It is also alleged that this forms one continuous road from Pala to

Temecula via Smith Mountain, and that it is impossible for the plaintiff to accurately describe its course upon the ground without a survey. During the trial of the case proof was made that in another action the plaintiff had been restrained from going upon the property owned by the Magees. We think the complaint sufficiently apprised the defendants of the location of the public road which was claimed to exist. ■ A second contention is that the complaint is fatally defective because of a misjoinder of parties and actions. In this connection it is claimed that an action against Hugh Magee for a way of necessity over his land is improperly joined with an action against the other defendants to establish the existence of a public road over their lands. In order to establish a way of necessity over the lands of Hugh Magee it was necessary for the plaintiff to establish that such a way would give him access to a public road. He could do this only by alleging and proving that a public road existed over the estate lands which came to the line of Hugh Magee's land. Only one cause of action is alleged and all defendants were proper parties. In our opinion the demurrers were properly overruled.

■ It is contended that the respondent's action is barred by the decision in the former case referred to (*Gray* v. *Magee, supra*). In that action this respondent sought to establish the existence of a public road running in a westerly direction from his land across a part of the estate lands to a point on the Pala-Temecula road, some distance southerly from the old adobe house. We are unable to see how a decision holding that such a road was not in fact a public road can be a bar to the present action to establish a way of necessity running northerly from the respondent's land, through the lands of his grantor, to a point on the Pala-Temecula road a short distance northerly from the adobe house. ■ It is further argued that, in any event, the issues of the present action could have been litigated in the former action and that the respondent should not be permitted to harass the appellants with a multiplicity of suits or to saddle the expense thereof "upon the breaking back of the isolated Magee mountain ranch". The sympathy we might otherwise feel is somewhat tempered by the evident fact that the expense of this litigation, apparently out of all proportion to the material values involved, could easily have

been avoided by a course of conduct governed less by bitterness and more by equitable considerations. While this respondent did not prevail in the former action, the record in that case discloses that his claim that the more direct road was a public one possessed considerable merit. If it may be assumed that he could with propriety have sought at the same time to establish both that he had an outlet and that he was entitled to a way of necessity because he had none, it certainly cannot be held that he foreclosed himself from all relief by first attempting to secure the more direct and better route to the outside world.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.