BARKER ET AL., RESPONDENTS, *v.* CONDON ET AL.,
APPELLANTS.

(No. 3,840.)

(Submitted March 16, 1917. Decided May 28, 1917.)

[165 Pac. 909.]

*Mines and Mining—Extralateral Rights—Presumptions—Evi-
dence—Insufficiency.*

Mines and Mining—Extralateral Rights—Evidence—Insufficiency.
  1.  In an action to recover the value of ore alleged to have been
  taken by defendants from a vein having its apex within the surface
  boundaries of the plaintiff's quartz lode claim, and for a perpetual
  injunction, the latter's testimony consisting of opinions and beliefs
  that in some way, not made to appear by actual development, the
  vein did so apex, *held* insufficient to warrant the relief demanded.

Same—Extralateral Rights—Identity of Vein Prerequisite.
  2.  In order that a quartz lode vein may be followed extralaterally,
  identity throughout is essential.

  [As to extralateral rights under the law of mines and minerals, see
  note in 58 Am, St. Rep. 263.]

Same—Quartz Lode Veins—Presumptions.
    3.  In the absence of a contrary showing, the presumption obtains
    that a vein found beneath the surface of one's quartz lode claim will
    continue to extend upward at the same angle as exhibited below.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Leonie E. Barker and another against Daniel Condon and others.   From a judgment in favor of plaintiffs and an order denying defendants a new trial, the latter appeal. Reversed and remanded.

*Mr. James A. Walsh* and *Mr. W. F. O'Leary,* for Appellants, submitted a brief; *Mr. Walsh* argued the cause orally.

*Messrs. Cooper, Stephenson & Hoover,* for Respondents, submitted a brief; *Mr. Sam Stephenson* argued the cause orally.

STATEMENT OF THE CASE BY THE JUDGE DELIVERING THE OPINION.

This action was brought to recover the value of ore taken by defendants from a vein alleged to apex in the Ripple lode mining claim, owned by plaintiffs.   Plaintiffs demanded judgment for a perpetual injunction and for the value of the ore extracted.

Defendants in their answer denied that they had extracted ore from any vein having its apex within the Ripple lode, and denied generally the other allegations of the complaint.   Further answering, the defendants alleged that the Montana Gold, Silver, Platinum & Tellurium Mining Company was the owner of the Tom Hendricks and the Sixteen to One lode claims, which, at the times mentioned in the complaint, were under lease to the defendants; that the Sixteen to One lode lies between the Tom Hendricks lode and the Ripple lode; that the vein from which the defendants extracted the ore in dispute is the Sixteen to One claim and Tom Hendricks claim, and within the exterior boundaries thereof extended vertically downward; and that no ore was taken from said vein outside of vertical planes drawn through the end lines of said claims.

The case was tried to the court and a jury. At the conclusion of the evidence the case was dismissed as to T. C. Power and Louis Heitman, originally joined as defendants. Plaintiffs offered evidence in support of their contention that the vein from which the ore was taken had its apex in the Ripple claim and was disclosed in a little tunnel within the claim and near corner No. 4. The defendants offered evidence tending to show that the vein from which the ore was extracted was nearly vertical, and that if it maintained the same dip in its course upward to the surface, it would not apex within the Ripple lode. At the conclusion of all the evidence, defendants moved for a directed verdict on the ground, among others, that there was no evidence to show that the vein from which the ore was taken had its apex in the Ripple lode. This motion was overruled. The jury brought in its special findings in favor of plaintiffs. The net value of the ore extracted was found by the referee to whom the matter was referred by the court to be $144.05. Thereafter judgment was entered in favor of plaintiffs. This appeal is from the judgment and from the order denying a new trial.

HONORABLE R. LEE WORD, a Judge of the First Judicial District, sitting in place of the Chief Justice, delivered the opinion of the court.

All the questions raised by the assignments of error are resolved in favor of the respondents, except one, and that is: Is there any evidence in the record showing or tending to show that the vein from which the ore was taken has its apex within the Ripple lode? In view of the admitted fact that the ore extracted came from beneath the surface of the Tom Hendricks and Sixteen to One claims, respondents concede that the burden is upon them to establish their right to go within the boundaries of said claims and extract ore. Have the plaintiffs and respondents discharged this burden resting upon them? Have they established by competent or any evidence the existence, within the lines of their claim, of the apex of the vein or of that portion of the vein from which the defendants extracted the ore sued

for? Upon this point the evidence offered by plaintiffs is in substance as follows:

John W. Wade testified that he had surveyed the Ripple lode and the tunnels, shafts and upraises made by plaintiffs in the working and development of that claim. That Exhibit "C" for plaintiffs was a map of the Ripple lode, showing these workings, drawn to scale, and also included the Sixteen to One and a portion of the Tom Hendricks claims; that the Ripple vein has a north and south course and dips east into the mountain; that in a little tunnel about twenty feet long, near corner No. 4 of the Ripple lode, and within that claim, there is a well-defined vein about eighteen inches or two feet wide; that this vein carries ore, has a dip to the east of about twenty feet in a hundred, and, in the opinion of the witness, is the apex of the Ripple vein and the apex of the vein from which the ore was taken beneath the surface of the Sixteen to One and Tom Hendricks lodes; that upon Exhibit "C" the witness has drawn a red line marked "Apex as Developed by Surface Openings," to indicate the cropping or upper edge of the apex of the Ripple vein; that the dotted line at the south end of the claim is an extension of the south end line, marked "3" and "4," in the same direction; that the lines in red, marked "Big Snowy Tunnel," indicate the workings of the defendants beneath the surface of the Sixteen to One and Tom Hendricks claims. The witness concludes that the vein in the little tunnel near corner No. 4 is the apex of the Ripple vein and the same vein from which the ore in dispute was taken, because it has about the same dip and the same character of ore as has the vein disclosed in the Big Snowy Tunnel; because the vein in the little tunnel is on a line with the upraises from the vein to the surface farther north in the Ripple claim; for that the cross-cuts on the surface, and made by the Joki tunnel for a distance of nearly two hundred feet, and by the Tom Hendricks tunnel, run by the defendants, show that there is no other vein than the Ripple vein from which the disputed ore could come; that the Ripple vein always dips into the mountain,—that is, to the east; that the veins below and to

the west dip to the west, and that there is no other vein which could apex in the little tunnel near corner No. 4 except the Ripple vein; that most of the openings where they took the dip of the vein are necessarily short, but that the dips show a trend out of the ground that will bring the apex into the red line marked "Apex as Developed by Surface Openings"; that in the Lower Tunnel, at a point marked "E–F," about 755 feet north of corner No. 4, the vein is almost vertical; that beyond the south end line of the Ripple claim the development work done by defendants shows that the vein turns southwesterly, and the dip of the vein is about sixty-one feet in a hundred, and that, keeping that dip, it would apex below where it does apex near corner No. 4 of the Ripple lode; that at the point "C–D" upon the map about 390 feet north of corner No. 4, the Lower Tunnel is about 250 feet deeper than the Pierce-Westgard Tunnel; that in this distance the variation is thirty-one feet; that the Pierce-Westgard Tunnel is 140 feet deeper than the Weidell Tunnel, at the point "C–D," and that between these tunnels at this point the vein dips from twenty to twenty-five feet; that from the Weidell Tunnel to the surface there is an upraise eighty feet in length, marked "Weidell Upraise"; that the dip of the vein between the surface and the Weidell Tunnel is about thirty feet.

On cross-examination the witness Wade testified in substance as follows: That the Weidell Tunnel is about 160 feet above the Westgard Tunnel; that at the point "C–D" there is no upraise from the Westgard Tunnel to the Weidell Tunnel; that the top of the Linquist upraise is 141 feet above the Westgard Tunnel, figured vertically; that at the point marked "E–F Upraise to Surface" the vein is vertical between the Lower Tunnel and the Westgard Tunnel, and between the Westgard Tunnel and the surface there is a dip of fifteen feet, or twenty feet in a distance of eighty feet, and below it is nearly vertical; that at the Weidell upraise it is 161 feet from the Westgard Tunnel up to the Weidell Tunnel, and from the Lower Tunnel up to the Westgard Tunnel it is 253 feet; perpendicularly it is about thirty feet shorter, the dip being about ten feet in a hundred;

that at the point "C–D," the last cross-section going south, there is more variation between the tunnels than at any other point; that at the point where the Lower Tunnel as projected crosses the south end line of the Ripple claim, it is 253 perpendicularly, and about thirty-five feet laterally below the Westgard Tunnel; that at the point where the Joki Tunnel cuts the vein it is about ninety feet vertically, and about fifteen feet laterally, above the Westgard Tunnel; that the red line marking the theoretical apex is about sixty-five feet from where the Joki Tunnel crosses the drift on the vein; that the witness has no knowledge of the Ripple vein coming to the surface at any point between the Weidell upraise and the south end line of the Ripple claim, a distance of 387 feet; that the witness does not know where the vein exposed in the Joki Tunnel—the uppermost tunnel—comes to the surface; that the vein shows in the south drift from the Joki Tunnel for a distance of 112 feet; that the south end of this drift from the Joki Tunnel is not directly over the Westgard Tunnel, but very close to it; that it lacks two, or three, or five feet of being directly over that tunnel; that the perpendicular distance from the south end of this drift to the Westgard Tunnel is about 120 feet; that the vein continues beyond the south end of the drift; that the lead may turn to the right, but the vein continues; that at the most southerly part in this drift from the Joki Tunnel, as shown upon the map Plaintiff's Exhibit "C," the Westgard Tunnel, the Barker Winze below the Westgard Tunnel, and the Joki Drift, are almost in a perpendicular line, that is to say, the vein disclosed in each is nearly perpendicular; that the lead after it leaves the Ripple claim on the south makes an abrupt turn to the right, of forty-five degrees, and shows a slope of sixty-one degrees, to the end of the Ripple; that in the little tunnel near corner No. 4 of the Ripple, the vein is eighteen or twenty inches wide; that the little tunnel runs across the vein; that the vein dips into the hill; that only five, or six feet of this vein are exposed; that the vein has a dip of twenty-one or twenty-two feet to the hundred—a very decided dip; that this little tunnel is fifteen or sixteen feet from corner

No. 4; that the difference in elevation between the point where the apex line—the red line—crosses the south end line and the Westgard Tunnel is 325 feet; that in this distance there are no developments to show where the vein is; that we have a measurement of twenty-three feet to the hundred between defendants' and plaintiffs' workings, which, if maintained to the surface, would bring the apex close to the vein in the little tunnel near corner No. 4.

On further cross-examination, the witness Wade testified that at the point "H," about 210 feet north from corner No. 4, the pitch from the Westgard Tunnel to the Joki Tunnel is eight feet in a hundred; that the pitch from the Joki Tunnel to the theoretical apex is about sixty feet in a hundred; that the witness wishes the jury to understand that at the point "H" he has no idea or conception or belief that the apex of the vein at that point would reach the apex indicated by the red line; that to what extent the actual apex will leave the theoretical apex line between the Weidell upraise and the end line of the claim cannot be told; that the wave of the lead as indicated below and particularly as indicated at the point beyond the line of the Ripple ground, might do anything and still reach what is the apex right here in the little tunnel; that it is all theoretical except from "this point to this point." "Q. When you say 'this point,' what do you mean? A. I mean the point over the Weidell upraise. It is all conjecture as to the actual position beyond the development in the lower tunnel. Q. Does the vein in the little tunnel dip to the point marked '3' at the southerly end? A. No. It dips to the east. It is not my contention, and not that of any of our witnesses, that the little vein has the same dip of the other one. It is all conjecture as to the actual position beyond the development in the lower tunnel, or that the other one maintains its dip until it reaches there. I am sure it will not. After it reaches this point it will rise a short distance and then will strain up and fall back as it always does. Q. Now, Mr. Wade, it being 375 (387) feet from the Weidell upraise—your last observation and this little tunnel—and

approximately 400 feet from that tunnel down to the Big Snowy Tunnel, and all that is undeveloped; nothing to show the trend or dip of the vein, and as you say these veins are liable to dip over and strain up, how can you base any theory upon which you can say to the jury that the apex is in any particular place? A. Well, it is impossible for any mortal man to tell to what extent that vein will wave and in what particular manner it will come to the surface and reach the point we have indicated here. In what manner it will reach there no mortal man can tell until it is developed and run through; but it is plain to my mind that it does reach there, because this apex belongs to something, and if it doesn't belong to something else in the neighborhood, it must belong to this lead.''

Other witnesses called by plaintiffs gave support to the testimony of Mr. Wade upon the question here considered. Gus Weidell, a witness for plaintiffs, testified on his direct examination that at the point in the Big Snowy Tunnel, referred to by both Wade and Leininger as a place where the vein had its greatest dip, there did not seem to be any walls; that there were no solid walls. Charles W. Helmick testified that there was a vein definitely disclosed on the north side of the little tunnel near corner No. 4; that the ground at that point was pretty badly shattered; that there was a more or less defined wall on the east side; that the vein was fifteen or twenty inches wide, with an eastern dip.

A summary of plaintiffs' evidence discloses that, in the little tunnel near corner No. 4, the ground is pretty badly shattered; that this tunnel is about twenty feet long; that a vein is disclosed therein having a more or less defined wall on the east side; that this vein has not been developed laterally; that it dips to the east; that the nearest surface opening on the vein is the Weidell upraise, 387 feet north; that the next point where the Ripple vein comes to the surface is the Linquist upraise, 210 feet north of the Weidell upraise and that the next and last point where the vein reaches the surface is the Pierce and Westgard upraise, 165 feet north of the Linquist raise; that at the

Pierce and Westgard upraise the lower tunnel is about 250 feet below the Westgard Tunnel, and the Westgard Tunnel is about ninety feet below the surface. The Weidell Tunnel at the Weidell upraise is about eighty feet below the surface; the Westgard Tunnel about 140 feet below the Weidell Tunnel, and the lower tunnel about 250 feet below the Westgard Tunnel. At the point where the Joki Tunnel cuts the vein, the distance to the surface is about ninety feet; the Westgard Tunnel is about 190 feet below the Joki Tunnel at this point, and the lower tunnel about 240 feet below the Westgard Tunnel. At the Pierce and Westgard upraise the vein is vertical between the lower and the Westgard tunnels; and between the Westgard Tunnel and the surface, a distance of about ninety feet, the vein departs thirty feet from the vertical. At the Weidell upraise the vein dips about forty feet between the lower tunnel and the Weidell Tunnel, a distance of about 390 feet; from the Weidell Tunnel to the surface the dip of the vein is greater. Going south from the Weidell upraise, the vein straightens up. At a point about forty feet north of the line of the Ripple claim between corners 4 and 5, the vein is nearly vertical, and it maintains this position for a distance of 150 feet or more, going south, in and through the ground claimed by the defendants.

It is to be noted that at the place in the defendants' claims from which the disputed ore was mined, east of, and a distance horizontally of about 120 feet from the vein in the little tunnel, and over 400 feet beneath the surface, the vein is nearly vertical; and that, if it maintains the same dip to the surface, it will come up within the surface boundaries of defendants' claims. From the whole evidence offered by plaintiffs, we conclude that it does not appear even probable that the apex of the vein from which the ore was taken is within the Ripple claim. Going south from the Weidell upraise toward the vein in the little tunnel, a distance of 387 feet, no one can say from the development now upon the Ripple claim where the Ripple vein will apex, much less that it will apex in the red line marked upon the map, "Apex as Developed by Surface Openings." True, as disclosed in the Pierce-Westgard and Weidell upraises,

the dip of the vein is greater as it nears the surface; but at no point south of the Weidell upraise does the vein as it appears in the tunnels or the stopes have a dip which, if maintained to the surface, would bring it out on or near the theoretical apex line. At the south end of plaintiff's claim the vein is nearly vertical. It is nearly vertical in the Big Snowy Tunnel, driven by the defendants, and does not make a turn or bend to the west until beyond the point where it is cut by plaintiffs' south [1] end-line continued in its own direction. At most we have an opinion or belief declared by plaintiffs' witnesses that in some way, not made to appear by any development work now existing, the apex of the vein from which defendants took the ore sued for is in plaintiffs' claim, and is shown in the little tunnel near corner No. 4. But this vein in the little tunnel has never been developed so much as a foot beyond the tunnel walls. Whether it persists or disappears; whether it straightens up or flattens out, are all matters of conjecture.

If plaintiffs had been found extracting ore from a vein beyond their side-lines and beneath the surface of defendants' claims, the presumption would be against them, and *prima facie* they would be trespassers until they made it appear that they got there by following the lode on its dip from its apex within [2] their lines. In order that a vein may be followed extralaterally, identity throughout is essential. (*Butte & Boston Min. Co.* v. *Lexington,* 23 Mont. 177, 75 Am. St. Rep. 505, 58 Pac. 111.) Not only are the defendants *prima facie* entitled to all ore beneath the surface of their claims (*Maloney* v. *King,* 25 Mont. 188, 64 Pac. 351; *Parrot S. & C. Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491, 64 Pac. 326; *Maloney* v. *King,* 30 Mont. 158, 76 Pac. 4; *Anaconda Copper Min. Co.* v. *Pilot-Butte Min. Co.,* 52 Mont. 165, 156 Pac. 409)., [3] but as a working hypothesis it is fair to assume, in the absence of a contrary showing, that the vein or veins there found will continue to extend upward at the same angle as exhibited below. (*Brewster* v. *Shoemaker,* 28 Colo. 176, 89 Am. St. Rep. 188, 53 L. R. A. 793, 63 Pac. 309, 311.) In any event, ore presumptively belonging to defendants, because beneath the

surface of their claims, cannot rightfully be taken from them, for that the owners of an adjoining claim have produced witnesses who entertain the opinion that the vein containing the ore has its apex in this adjacent claim, and this presumption which attends defendants "is not overturned by speculative conjecture or intelligent guess." (*Heinze* v. *Boston & M. etc. Min. Co.*, 30 Mont. 484, 488, 77 Pac. 421; *Collins* v. *Bailey*, 22 Colo. App. 149, 125 Pac. 543.)

That plaintiffs might, by work done upon their vein from its apex down to the disputed territory, furnish substantial evidence that their claims, as to the identity of their vein with the vein found in defendants' ground, are well founded need not be questioned here; it suffices that they have failed to present such evidence in this suit; and as it appears they have presented all the evidence at this time available to them, it follows that the judgment should be reversed and the cause remanded with directions to dismiss the complaint.   It is so ordered.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

Rehearing denied June 28, 1917.