[Civ. No. 1598.   Fourth Appellate District.—February 20, 1936.]

A. E. BRUGGER et al., Appellants, v. LEE YIM et al., Respondents.

Ogden & Steelman, William B. Ogden, Samuel Steelman and Fred A. Wilson for Appellants.

Swing & Swing for Respondents.

JENNINGS, J.—The plaintiffs, who are lessees in possession of a mining claim known as the Old Pete Extension

claim instituted this action in trespass against the defendants who are owners of an adjoining claim known as the Old Pete claim. The complaint alleges that plaintiffs are entitled to the possession of a certain vein or lode known as ''The Old Pete Extension'' which has its apex within the exterior boundaries of their claim and which departs from the side lines of said claim in its downward course or dip. It is further alleged that plaintiffs have the right to occupy, mine and extract mineral from said lode throughout its entire downward course or dip. The pleading also alleges that while plaintiffs were in possession and entitled to possession of the said lode having its apex in their claim, the defendants entered upon and into the lode on its downward dip, and wrongfully mined, extracted and removed from the vein, ores and minerals of value in excess of $100,000 and that on April 26, 1934, the defendants destroyed a shaft which plaintiffs had sunk upon the aforesaid vein for the purpose of extracting mineral therefrom which damaged plaintiffs in a specified amount. It is further alleged that defendants threaten to continue to mine, extract and remove minerals from said vein or lode, that the sole value of said vein and mining claim is contingent upon the mineral content thereof which has been devastated and will continue to be devastated by the acts of the defendants, and thereby plaintiffs will be subjected to irreparable injury and loss which is not susceptible of correct estimate for which reason adequate pecuniary compensation therefor cannot be made. The prayer of the complaint is for a money judgment in the amount designated in the body of the pleading and that defendants be permanently restrained from interfering with said lode or vein and with the operations of plaintiffs thereon, and from mining in or upon said lode or vein.

To the above described complaint the defendants filed an answer wherein it is alleged that said defendants entered upon and discovered the Old Pete claim and other designated claims on a specified date and located said claims after discovering therein a vein or lode of gold-bearing ore and have been in possession of said claims ever since said discovery and location, that the vein or lode on the Old Pete claim runs in a northerly and southerly direction and is exposed at various places along its strike, that the apex of said vein is wholly within the exterior boundaries of the Old Pete claim, that

subsequent to the location of their claims defendants made further explorations on the Old Pete claim and developed the fact that the ore vein was of commercial value and carried high value in gold, that on a specified date plaintiffs' predecessors in interest entered upon certain ground lying south of the Old Pete claim and purported to locate a mining claim known as the Old Pete Extension claim south of the south end line of the Old Pete claim on which no vein or lode of ore has been discovered, which has its apex within the exterior boundaries thereof or which dips or extends downward under the Old Pete claim, that the discovery and location of the Old Pete claim by defendants antedated the alleged discovery and location of the Old Pete Extension claim. It is further alleged that on a stated date the plaintiffs began the construction of a shaft which is the shaft mentioned in plaintiffs' complaint at a point about six feet south of the south end line of the Old Pete claim, and caused it to pass beyond the exterior boundaries of the Old Pete Extension claim and to run into and under the Old Pete claim at a point about 20 feet below the surface, that said shaft was not sunk or run upon any vein which has its apex within the exterior boundaries of the Old Pete Extension claim. The prayer of the answer is that plaintiffs take nothing by their action and that defendants be awarded their costs incurred in defending the suit.

The action was tried on the issues raised by the above described pleadings and resulted in the entry of a judgment in favor of the defendants. From the judgment thus rendered the plaintiffs have prosecuted this appeal.

It is apparent that the cause of action alleged in the complaint is based on the extra-lateral right of the locator of a mining claim to follow a lode or vein of mineral-bearing ore on its downward course, which is granted by the provisions of section 2322 of the Revised Statutes of the United States. This statute is in the following language:

"The locators of all mining locations heretofore made or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May, eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with State, Territorial, and local regulations not in conflict with the laws of

the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations. But their right of possession to such outside parts of such veins or ledges shall be confined to such portions thereof as lie between vertical planes drawn downward as above described, through the end lines of their locations, so continued in their own direction that such planes will intersect such exterior parts of such veins or ledges. And nothing in this section shall authorize the locator or possessor of a vein or lode which extends in its downward course beyond the vertical lines of his claim to enter upon the surface of a claim owned or possessed by another.''

As indicated by the aforesaid allegations of the complaint, it was contended by appellants during the trial of the cause that there is within the exterior boundaries of their claim, known as the Old Pete Extension, a vein or lode of gold-bearing ore which has its top or apex within the exterior boundaries of said claim, and which in its downward course extends outside the north side line of said claim and beneath the surface of the adjoining land lying to the north, which is within the exterior boundaries of the Old Pete claim owned by respondents. It is therefore evident that, upon the trial of the action, the burden rested upon appellants to establish that there is on the Old Pete Extension claim a vein of gold-bearing ore which has its top or apex within the exterior boundaries of said claim and which in its downward course extends beyond the vertical north side line of the surface location of said claim.

It is the contention of appellants on this appeal that certain findings of the trial court are lacking in evidentiary support. The particular findings which are thus attacked are those wherein the court found that there is within the Old Pete claim a vein or lode called the Old Pete lode, which has its top or apex within the exterior boundaries of said claim and which extends in its onward course from a designated point north of the south end line of the Old Pete claim north-

erly to a point beyond the Gulch cut on said Old Pete claim, that the said vein reaches the surface at various points along the line of its course as above described and its top or apex is along said line, that said vein or lode on its downward course into the earth dips easterly, that along the south line of the Old Pete claim there is a fault which extends in an east-west direction along and near said south line of said claim, which fault cuts off the onward course of said vein or lode, and beyond and south of which fault the vein or lode does not extend, that in certain workings on the Old Pete Extension claim which are adjacent to the south end of the Old Pete claim a contact between two different rock strata known as rhyolite and dacite is exposed but that such contact is not the top or apex of the Old Pete lode or vein nor is it the apex of any lode or vein within the Old Pete claim nor does said Old Pete lode or vein, which is the same lode referred to in the complaint as the "Old Pete Extension lode or vein", have its top or apex within the boundary lines of the Old Pete Extension claim, that the aforesaid contact between rhyolite and dacite is not exposed along the onward course or strike of the Old Pete vein or lode, that appellants are in possession of all veins or lodes, if there are any, which have their tops or apices within the Old Pete Extension claim but that none of such veins on its downward course or dip enters the Old Pete claim, that appellants in sinking the shaft referred to in the pleadings which is called the Randall shaft passed over and into the Old Pete claim and after such entry took ore and mineral from the Old Pete vein within the exterior boundaries of the Old Pete claim, that respondents have not at any time entered upon any vein or lode or taken or extracted any ore or mineral from any vein which has its apex within the Old Pete Extension claim and that all ore and mineral heretofore taken and extracted by respondents was removed from the Old Pete vein or lode. In other words, it is the contention of appellants that the evidence adduced during the trial of the action established the existence of a vein or lode which has its top or apex within the exterior boundaries of their claim, that the onward course or strike of such vein is east and west and that the dip of said vein is to the north, and that appellants consequently have the right granted to them by the above quoted statute to pursue the vein on its dip out-

side the vertical north side line of their claim underneath the surface of the Old Pete claim owned by respondents.

A clearer understanding of the problem here presented may be had by a general description of the terrain whereon the mining claims of the opposing parties are located. It is a low-lying desert hill situated about six miles south of Ludlow in San Bernardino County. Its shape resembles roughly the base of a cone whose top has been cut off by a plane sloping downward from south to north. On the top of the truncated cone a layer of rock known as rhyolite has been superimposed. The depth of this rhyolite capping varies from a few feet to upwards of 20 feet. Beneath the rhyolite and

forming the base of the cone is a body of rock known as dacite. On the western edge of the north slope of the hill the overlying rhyolite is broken off abruptly and at certain places forms a low cliff or escarpment. On the eastern edge of the north slope the rhyolite has been eroded down to the level of the dacite and the contact between rhyolite and dacite is not so marked. At the crest of the hill the rhyolite capping extends in a southerly direction for a short distance and disappears, having evidently been removed by erosion. On the north at the base of the north slope of the hill the rhyolite disappears in a wash. The evidence relating to the origin of the rhyolite indicates that it is the remains of a volcanic flow which originally descended from some higher source, and that the hill and its capping of rhyolite has resulted from the effects of erosion on the surrounding area, leaving the particular mass comprehended in the hill upraised above the surface of the area by which it is surrounded, due possibly to the fact that it is harder than the surrounding area by reason of the presence of a greater amount of quartz in its composition.

Appellants are the lessees in possession of the Old Pete Extension Lode Mining claim which extends in an east-west direction across the crest of the above-described hill. Respondents are the owners of the Old Pete Lode Mining claim which is located in a north-south direction on the north slope of the hill. The claims are adjoining and the south end line of respondents' claim coincides with the north side line of appellants' claim.

The vein or lode which forms the subject of this controversy is exposed along the west side of the north slope of the hill and has been opened up by several shallow workings at different places along the exposure which is generally denominated as the "escarpment". This escarpment and exposure of the mineral-bearing vein extends in a general north and south direction.

The above described hill has been the subject of exploration by numerous prospectors of mining claims for a considerable period of time and numerous references to locations that were made prior to the dates of locations here involved occur in the testimony of witnesses. None of such prior locations is of importance, however, in this proceeding. In the month of December, 1932, the respondents, Wheelock and

Yim, sunk a preexisting shaft a few feet deeper and discovered a body of commercial ore. Further excavation of the ore body developed the particular working known as the "Glory Hole" from which about 25 carloads of ore were mined and shipped to a smelter.

In the month of January, 1933, J. Dorn, who had formerly unsuccessfully prospected the hill, located three claims on land adjoining respondents' claims and lying to the south of said claims. Dorn named William Maher as colocator of the three claims which he then located. At this time the three claims located by Dorn extended in a north-south direction corresponding to the location of respondents' claims. At a subsequent date Dorn and Maher entered into an option and working agreement with appellant A. E. Brugger who later conveyed interests in the property to the appellants, Fay and May. After appellants had become lessees of the property and were in possession as such lessees they engaged in certain exploratory work on the claims originally located by Dorn and arrived at the conclusion that the vein or lode of ore which was exposed along the west side of the north slope of the hill did not strike in a north-south direction, but that the strike of the vein was in an east-west direction and dipped to the north, and that the apex or top edge of this vein was on their claims. They thereupon caused to be filed an amended notice of location by which they so altered the original location of the claims in which they were interested that the side lines of said claims ran in an east-west direction and the end lines thereof in a north-south direction. The effect of this action was to make the Old Pete Extension claim the most northerly of the three claims and the north side line of said claim to coincide with the south end line of respondents' Old Pete claim. Appellants thereupon proceeded to sink an incline shaft which proceeded from a point about 12 feet south of the monument which marks the center of the south end line of respondents' Old Pete claim in a northerly direction for a distance of approximately 49 feet from its point of beginning. This incline shaft which is called the "Randall incline" passed beneath the south end line of the Old Pete claim as said line was marked on the surface and entered ground which lay below the surface of the Old Pete claim. Respondents blew up and destroyed this shaft after it had

entered upon the ground lying beneath the surface of their claim. This action in trespass was thereupon instituted.

Appellants concede that, upon the trial of the cause, it was incumbent upon them to establish the existence on their property of a lode of mineralized rock which has its apex on their land and which dips in a general northerly direction, thus giving them the right to pursue the vein on its dip beyond their north side line and beneath the surface of respondents' Old Pete claim. It is their contention that they successfully sustained this burden and that the findings of the trial court to the contrary are wholly unsupported by the evidence. In giving consideration to the contention of evidentiary insufficiency the familiar rule which precludes the disturbance of findings when the evidence is conflicting is applicable.

Analysis of the findings discloses that there are two which are here singled out for particular attack. These are, first, the finding that the Old Pete lode has its apex on the Old Pete claim of respondents and not on the Old Pete Extension claim of appellants and, second, that the Old Pete lode is cut off on the south by a fault, and that the lode does not extend beyond the south end line of the Old Pete claim. It must be conceded that if either of these findings finds support in the evidence this appeal must fail. It is obvious that if the first of the above mentioned findings has evidentiary support the appeal must be unsuccessful since the existence of the apex of the particular lode or vein known as the Old Pete lode on their land was the all-important fact which appellants were required to establish to support their claim of extralateral right. It is equally apparent that, if the trial court's finding respecting the existence of a fault near the south end line of the Old Pete claim, which cut off the progress of the vein, has evidentiary support, the judgment must stand. This must be true because even though the court may have erred in its findings regarding the strike and dip of the vein appellants could have suffered no prejudice thereby if the finding as to the existence of the fault has some evidentiary support. Obviously, if the Old Pete lode which admittedly exists on the Old Pete claim and has there been exposed was cut off near the south end line of said claim appellants could have no basis for their claim of extralateral right to pursue this particular vein on its alleged dip to the north.

The contention of appellants that the trial court's finding that the apex of the Old Pete lode is on the Old Pete claim is lacking in evidentiary support will herein be first considered.

In giving consideration to this contention the situations of the respective parties to this action must be borne in mind with regard to certain principles which are clearly established by the law relating to the subject of conflicting lode claimants.     It must be observed that, not only were appellants the plaintiffs in this action and, as heretofore pointed out, required by a familiar and fundamental rule of law to establish by satisfactory evidence the truth of the affirmative allegations of their complaint but they were also claiming a right which is in direct derogation of the presumption of ownership of all beneath the surface by the legal owner of the surface. They were asserting the right to proceed below the surface of land owned by others. In section 393 of American Mining Law by Ricketts it is pointed out that "Where a mineral claimant passes beyond the vertical plane of a side line of his claim and extracts and removes ore from beneath the surface of an adjoining claim, the presumption is against him. *Prima facie* he is a trespasser unless and until he makes it appear that he reached the point from which the ore was taken by following on its dip a vein or lode having its apex within the surface lines of his claim. The presumption of ownership of all beneath the surface, including minerals, may be overcome by proof showing that such mineral is a part of a vein or lode apexing within the claim of another." The text is supported by the following decisions: *Stewart Co.* v. *Ontario Min. Co.,* 237 U. S. 350 [35 Sup. Ct. 610, 59 L. Ed. 989] ; *Cheesman* v. *Shreeve,* 40 Fed. 787 ; *Barker* v. *Condon,* 53 Mont. 585 [165 Pac. 909] ; *Red Wing Gold Min. Co.* v. *Clays,* 30 Utah, 242 [83 Pac. 841]. Again in section 681 of the same treatise the learned author makes the following statement: "A person entering within the side lines of the mining claim of another for the purpose of mining the same is *prima facie* a trespasser." The following authorities support the declaration: *Flagstaff Silver Min. Co.* v. *Tarbet,* 98 U. S. 463 [25 L. Ed. 253] ; *St. Louis M. & M. Co.* v. *Montana Mining Co.,* 194 U. S. 235 [24 Sup. Ct. 654, 48 L. Ed. 953] ; *Wakeman* v. *Norton,* 24 Colo. 192 [49 Pac. 283] ; *Tom Reed Gold Mines Co.* v. *United Eastern Mining Co.,* 24 Ariz. 269 [209 Pac. 283]. The statement continues in the following

language: "The presumptive trespass may be justified by showing the existence of a vein or lode having its apex within the boundaries of a valid lode location; that such vein or lode departs from the side lines of such location on its downward course between the planes of its parallel end lines and penetrates the ground in controversy." Two California cases are cited in support of the last quoted language, viz.: *Central Eureka Min. Co.* v. *East Central Eureka Min. Co.*, 146 Cal. 147 [79 Pac. 834, 9 L. R. A. (N. S.) 940], and *Daggett* v. *Yreka Min. etc. Co.*, 149 Cal. 357 [86 Pac. 968]. Certain language used by the Supreme Court of Idaho in the case of *Stewart Mining Co.* v. *Ontario Mining Co.*, 23 Idaho, 724 [132 Pac. 787], indicates that the burden which rests upon one who claims an extralateral right to penetrate beneath the surface of land owned by another in pursuit of a mineral lode is by no means inconsequential. At page 794 of the opinion the court said:

"This brings us to a principle of law which has been recognized, or in some respect adverted to, in some of the extralateral rights cases, to the effect that one who claims such a right, and seeks to take ore bodies from beneath the surface boundaries of another location, must prove clearly and satisfactorily that he has the apex of the vein or lode within the surface boundaries of his location, and that he is pursuing the vein on its 'downward course'. (*Consolidated Wyoming Gold Min. Co.* v. *Champion Min. Co.*, (C. C.) 63 Fed. 540; *St. Louis Min. & Mill. Co.* v. *Montana Min. Co.*, 194 U. S. 235 [24 Sup. Ct. 654, 48 L. Ed. 953]; *Duggan* v. *Davey*, 4 Dak. 110 [26 N. W. 887].) Where the evidence is doubtful and uncertain, the court ought to decline its aid to one who is invoking its decree in order to enable him to pass beyond his own side lines and remove ore bodies from beneath the location of another. Here, too, the Ontario is the senior location by many years, and before a junior location may interfere with ore deposits under the surface of the senior location the grounds on which the right is asserted ought to be made very clear."

It may be observed that the last sentence of the above quoted language has peculiar application to the instant case since it is undisputed that the location of their claims by respondents antedated by a short period of time the location

of the Old Pete Extension group of claims by those through whom appellants claim an interest therein.

We do not understand that appellants deprecate the unquestioned burden of proof which they were required to sustain in their assertion as claimants under junior locators of the extralateral right to pursue the lode on its dip beyond the north side line of their claim and beneath the surface of the adjoining claim. It is their position that they successfully sustained the burden and that the evidence which they produced during the trial clearly showed that the apex of the Old Pete lode or vein is within the exterior boundaries of the Old Pete Extension claim, that the strike of the lode is east and west and that the dip is to the north beneath the surface of the Old Pete claim.

Some definition of the terms "apex", "strike" and "dip" is desirable at this point for a proper appreciation of appellants' contention. In volume I of Lindley on Mines, third edition, section 318, at page 718, the term "strike" is defined in the language of Judge W. H. Beatty as follows: "The strike or course of a vein is determined by a horizontal line drawn between its extremities at that depth at which it attains its greatest longitudinal extent." In section 173 of Ricketts American Mining Law the term is defined in the following language: "The course or strike of a vein or lode is the direction of the vein or lode across or through the country." In section 177 of the last-mentioned treatise it is stated that the term "dip" is a miner's word not found in the mining act which uses the expression "downward course". The latter expression is said by the author to be synonymous with the term "dip" and dip is there defined as the direction of the vein or lode in its descent into the earth. In the abovementioned section of Lindley on Mines the following language used by Judge Beatty is quoted: "The dip of a vein, its 'course downward' (Rev. Stats., sec. 2322; Comp. Stats. 1901, p. 1425; 5 Fed. Stats. Ann. 13), is at right angles to its strike; or, in other words, if a vein is cut by a vertical plane at right angles to its course, the line of section will be the line of its dip . . . "

Definition of the term "apex" is not free from difficulty. Ricketts defines it in section 169 of his treatise as follows: "the highest point in a vein or lode is the ascent along the line of its dip or outcroppings, and beyond which the vein or

lode extends no further, so that it is the end or reversely the beginning of the vein or lode". In the following section (sec. 170) the author states: "It must be the top or terminal edge of the vein on the surface, or the nearest point to the surface, and it must be the top of the vein proper, rather than of a spur or feeder, just as the highest point in the roof of a house would be taken to be the apex of the house and not the chimney or flagstaff. Again an apex is a point from which the vein has a dip, as well as strike, or course, else it confers no extralateral right." If we accept the definition of "apex" of the vein as the ascent along the line of its dip beyond which the vein extends no farther to the surface it is apparent that the dip is a determinative factor in the location of the apex. It is also apparent from the above-quoted definition of Judge Beatty that there is a fixed formula for determining the "dip" of a vein if its strike or course is known. Since this is true it is obvious that, in a controversy of this character, the correct location of the strike of the lode is an important feature.

Appellants recognize that the location of the strike of the Old Pete Lode is a highly important feature of the case and have devoted much of their argument to an effort to demonstrate that the trial court's finding that the strike of the lode is north and south is lacking in evidentiary support. It may not successfully be urged that the finding as to the direction of the strike has not support in the evidence. Examination of the record demonstrates that a number of witnesses produced by respondents who were properly qualified by training and experience testified that the direction of the strike is as the court found it to be. These witnesses also testified that the dip of the lode was in a general easterly direction.

Moreover, the record shows that, during the trial of the cause, the court accompanied by counsel for the respective parties visited the property involved in the action and with the assistance of counsel personally inspected the ground and various points and locations thereon which were indicated on certain maps introduced as exhibits in the case and which were taken and consulted by court and counsel on the visit. The effect of this inspection by the court was, as stated by counsel for appellants during the trial, to place the hill in evidence. It is pointed out by Ricketts in his treatise to which reference has heretofore been made (sec. 398) that,

"by the weight of authority, the facts ascertained by a view are to be considered as in evidence and given due weight in reaching a conclusion". That this is the rule in California is not open to doubt. (*People* v. *Milner,* 122 Cal. 171 [54 Pac. 833]; *People* v. *Pompa,* 192 Cal. 412, 423 [221 Pac. 198]; *Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699, 704 [28 Pac. (2d) 919]; *Hatton* v. *Gregg,* 4 Cal. App. 537 [88 Pac. 592]; *City of Oakland* v. *Adams,* 37 Cal. App. 614 [174 Pac. 947]; *Vaughan* v. *County of Tulare,* 56 Cal. App. 261 [205 Pac. 21]; *Gray* v. *Magee,* 133 Cal. App. 653, 658 [24 Pac. (2d) 948]; *Wade* v. *Thorsen,* 5 Cal. App. (2d) 706, 712 [43 Pac. (2d) 592].)  It must therefore be conceded that the findings of the trial court respecting the strike and the dip of the Old Pete lode are amply supported not only by the testimony of expert witnesses illustrated by numerous maps and diagrams which were admitted in evidence as exhibits, but also by the impressions which the trial court received on its view of the land and the various workings then present on the claims of the opposing parties.

However, appellants contend on this appeal that the testimony of all witnesses as to their conclusions respecting the strike and dip of the vein or lode which is contrary to mathematical computation based on data included in a certain exhibit introduced during the trial must be disregarded. The exhibit which forms the foundation for this argument is an areal map of those portions of the claims of the parties which are involved in this proceeding. On this map contour lines appear showing elevations above sea level on the hill. The map was prepared as a result of a survey of the hill. For the purpose of the survey the highest point of the hill which is near the south end center of the Old Pete claim of respondents was given an assumed elevation of 2,000 feet above sea level. The contours were then run by the surveyor at levels of 10 feet descending from the highest point of the hill to the lowest. Tracing the contour lines of the map makes it possible to determine the elevation of any point on the map with relation to the altitude of other points.

The next step in appellants' argument is that various workings on the Old Pete claim disclosed the presence of the contact between the rock strata known as rhyolite and dacite which the trial court found to be the hanging wall of the vein; that the evidence showed that the contact was exposed

at an elevation of 1910.5 feet in a certain working known as the John Suter Cut which is located on respondents' Old Pete Claim No. 1 which adjoins the Old Pete claim on the east some distance east of the east side line of the last-mentioned claim; that the evidence disclosed that the contact was also exposed at the upper edge of the working known as the Glory Hole located on the Old Pete claim; that an examination of a table of levels of various workings on the Old Pete claim and the Old Pete Extension claim of appellants prepared from the contour map together with reference to a certain model prepared by appellant A. E. Brugger and received in evidence shows at once that a horizontal plane which is passed through the contact at the John Suter Cut at an elevation of 1910.5 feet would also pass through the contact at a point near the upper edge of the Glory Hole; that the line where this horizontal plane cuts the contact between rhyolite and dacite is the true strike or "onward course" of the hanging wall of the vein and consequently of the vein; that such a line bears approximately south 72 degrees, 30 minutes east, or 17 degrees, 30 minutes south of east and is the course or strike of the vein; that the true dip is always at right angles to the strike and is therefore north 17 degrees, 30 minutes east, which is 14 degrees, 32 minutes below the horizontal in the direction last noted. It should here be noted that a necessary element of the above-stated reasoning is the definition of the strike of a vein as being determined by a horizontal line drawn between its extremities at that depth at which it attains its greatest longitudinal extent. Appellants concede that the contact was exposed in five different workings on the Old Pete claim which are located along the line which the trial court found to be the course of the vein. Beginning on the north, these workings are, first, the Glory Hole, second, a shallow pit approximately 100 feet south from the Glory Hole, third, a cut located about 75 feet south from the shallow pit, fourth, the workings known as Overton No. 2, fifth, the workings known as Overton No. 1, the most southerly of respondents' workings. The horizontal distance between the Glory Hole on the north and the Overton No. 1 workings is approximately 360 feet. Inspection of the contour map fails to disclose thereon the location of the Suter Cut, hence the horizontal distance between the exposure of contact in the Glory Hole and that which occurs in the Suter Cut may not

be determined with that degree of accuracy which is desirable. The location of the Suter Cut is, however, shown on an extension to a reduced copy of the contour map which is attached to appellants' opening brief. It is not possible accurately to transpose the location of the Suter Cut from the reduced map accompanying the brief to the contour map so that the horizontal distance between the two points may be accurately determined. Appellants have neither stated the distance nor have they referred to any place in the lengthy transcript where the distance is given. It is, however, obvious that the horizontal distance is a matter of some importance since by the method for determination of the strike of a vein approved by appellants the longitudinal extent of the vein is an important factor. In any event, it is apparent that the horizontal distance between the two points of contact which appellants emphasize is at least 50 feet less than the horizontal distance between the Glory Hole on the north and Overton No. 1 workings on the south. Appellants therefore are insisting upon selecting a horizontal distance east and west between two points of contact which is obviously less than the horizontal distance north and south between two other points of contact along a line which contains three additional points of contact because they maintain that the elevation of the different points of contact is the all-important factor in arriving at a correct determination of the strike of the vein since the method of determination approved by them provides for drawing a horizontal line between the extremities of a vein at that depth at which it attains its greatest longitudinal extent. It is pointed out that the elevation of the two points of contact which they select as indicative of the strike of the vein in an east-west direction is approximately identical, whereas the elevation of the contact at Overton No. 1 workings on the south is 90 feet higher than the elevation of the contact in the pit at the Glory Hole. It is further pointed out that the elevation of each point of contact proceeding south from the Glory Hole along the line which the court found to be the strike of the vein is successively higher than the elevation of the contact in the Glory Hole. It may be remarked at this point that, under the facts disclosed by the evidence it could hardly be otherwise since the line from north to south proceeds up the north slope of a hill whose crest on the south is approximately 100 feet higher than the

elevation of the Glory Hole on the north. In other words, the contention that the exposure of contact at two points of approximately equal elevation is determinative of the strike of the vein entirely eliminates any consideration of the topography of the hill. It should be observed that Dr. Frederick L. Ransome, an expert witness called by appellants who is described by appellants as "a man of such eminent qualifications, so far superior to those of any other witness on the case, a man of such eminent reputation and standing, certainly should have his testimony accepted as practically final in a case of this kind" refused point-blank to consider a difference in elevation between two points of contact exposure as indicative of the dip of the vein because, as he pointed out: "You would have to take into consideration the topography as well as those two points." If it is necessary to take into consideration the topography of the hill in attempting to discover the dip of the vein it would seem reasonable that the factor of topography would likewise be an essential feature in determining the strike. Another expert witness called by appellants, H. R. Van Wagenen, in referring to the workings on the Old Pete claim known as Overton No. 1 and the Suter Cut on Old Pete Claim No. 1 said that "of course we have never been interested in establishing what the dip is between here and this hole because those two points are on neither the strike nor the dip". It may here be remarked that intelligent reading of the voluminous record has been rendered difficult by the very frequent use of the words "here" and "there" by witnesses in testimony wherein reference was being made to maps and other exhibits. In the above-quoted testimony it may not with certainty be declared just what two points the witness had in mind from the language "between here and this hole", but from the context it would appear that one of the points was the Suter Cut which the witness testified was "on neither the dip nor the strike".

Finally, it must be borne in mind, in giving consideration to appellants' above stated contention, that the correct location of the strike and dip of the lode was not the final problem which was presented to the trial court for its determination. The essential and necessary fact which the court had to determine was whether or not appellants had satisfactorily proven that the apex of the Old Pete lode was within the exterior boundaries of the Old Pete Extension claim of which

appellants were in possession as lessees. Respondents are making no claim of right to proceed beyond the lines of their claims. Appellants, on the other hand, are making such claim, and their insistence upon the right to proceed beyond the south end line of an adjoining claim owned by respondents and to penetrate beneath the surface of such claim imposed upon them the burden of establishing by clear and convincing evidence that the apex of the lode was located on their land. With reference to the "course" of a vein it is declared by the learned author of Lindley on Mines (3d ed.) in section 318 at page 723, that "The 'course' of the vein, for the purpose of guiding the miners in making their location, is therefore not the 'technical true strike of the engineer, the line which would be cut by a horizontal plane. Such a requirement would be in many cases impracticable.' The true method of determination is found in the rule laid down by the Supreme Court of the United States in the Flagstaff case, and followed by Judge Beatty in the North Star case (*Carson City Gold & Silver Min. Co.* v. *North Star Min. Co.*, (C. C.) 73 Fed. 597), that the workings nearest the surface are better guides to the course of the apex than those far below." As was said in *Flagstaff Co.* v. *Tarbet, supra,* "the most practicable rule is to regard the course of the vein as that which is indicated by surface outcrop or surface explorations and workings. It is on this line that claims will naturally be laid whatever be the character of the surface, whether level or inclined." The above language was quoted with approval in the leading case of *Duggan* v. *Davey,* 4 Dak. 110 [26 N. W. 887]. In section 173 of American Mining Law by Ricketts the author uses the language of the Flagstaff case.

In the instant case it is apparent that, at the time of trial, no very extensive workings had been made on either of the two claims which are here involved. Greater development had certainly been effected on the Old Pete claim of respondents than on the Old Pete Extension claim of appellants. On the former claim the most extensive operations had centered about the Glory Hole, from which 25 carloads of ore had been removed and shipped to the smelter. About two carloads of ore had been taken from the Overton No. 1 workings near the south end line of the claim. No ore had been taken from any workings on the Old Pete Extension claim. The various workings on the latter claim consisted entirely

of a few exploratory shafts and cuts which had evidently been sunk in the hope that they would disclose the existence of the apex of the Old Pete lode on said claim, and thereby give appellants the right to proceed beyond the north side line and to penetrate beneath the surface of the Old Pete claim. Admittedly, however, shallow workings on the last mentioned claim had disclosed the contact between rhyolite and dacite comparatively near the surface on a line extending from the Gulch cut on the north to the Dorn cut on the south. The Old Pete claim had been located lengthwise of this line on the assumption that it indicated the course of the lode. The trial court evidently applied the ''most practicable'' rule announced by the Supreme Court of the United States in the Flagstaff case and selected this line as indicative of the course of the vein in the absence of sufficient exploration by appellants to demonstrate that the course of the lode is in an entirely different direction. Examination of the entire record impels the conclusion that the findings of the trial court, particularly the finding that the apex of the Old Pete lode is not located on the Old Pete Extension claim, are not so lacking in evidentiary support as to require their disturbance. The contention of appellants in this regard must therefore be rejected.

The conclusion that the trial court's findings respecting the strike, dip and apex of the Old Pete lode may not properly be disturbed renders it unnecessary to give consideration to the contention that the finding regarding the existence of a fault near the south end line of the Old Pete claim is likewise lacking in evidentiary support. Obviously, if it must be declared that a finding that the apex of the lode is not within the boundaries of the Old Pete Extension claim is sustainable, the finding that there is a fault near the south end line of the former claim which cuts off the progress of the vein toward the south becomes relatively unimportant. The latter finding would be important in the event it should appear that the former finding is entirely lacking in evidentiary support, since it would then be necessary for appellants to demonstrate that the finding that no ore exists to the south of the south end line of the Old Pete claim because of the interference of the fault is unsupported by the evidence. However, it may here properly be observed that examination of the record impels the conclusion that the court's finding

respecting the existence of a fault and its effect on the Old Pete lode likewise has evidentiary support.

For the reasons stated, the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1936.