[Civ. No. 3234. Fourth Dist. Oct. 25, 1943.]

W. D. ANDERSON, Respondent, v. STATE OF CALI-
FORNIA et al., Appellants.

Robert W. Kenny, Attorney General, L. G. Campbell, Deputy Attorney General, C. C. Carleton, Frank B. Durkee, C. R. Montgomery, Robert E. Reed and Francis J. Carr for Appellants.

Martin J. Coughlin and Julius J. Novack for Respondent.

MARKS, J.—This action is in the nature of an action for inverse condemnation. It sought recovery for damages alleged to have been suffered by reason of the change of grade of the highway on which plaintiff's property fronted. Plaintiff recovered judgment for $1,000.

Plaintiff's property is situated about three quarters of a mile south of the southerly city limits of the city of San Bernardino. It lay on the west side of South E Street with a frontage of 191.11 feet. Plaintiff had on it a machine shop, garage and other smaller buildings in which he conducted his business.

Prior to March 2, 1938, E Street was a main paved highway running in a general northerly and southerly direction with its grade about one foot above that of the adjoining land. Plaintiff had easy access to the street from all points of the frontage of his property. Lytle Creek carried water from the mountains northwest of San Bernardino into the Santa Ana River. Its general course is southeast until it reaches a point a short distance west of E Street and north of plaintiff's property where it makes a turn to the southwest. Warm

Creek runs in a general northerly and southerly direction through the easterly part of San Bernardino. South of the city limits it makes a turn to the west, passes under E Street under a bridge located a short distance north of plaintiff's property and flows into Lytle Creek at the lower end of its curve westerly. A waterway carrying surface and seepage waters ran in a southwesterly direction and passed the southeasterly corner of plaintiff's property. There were two pipes under E Street easterly of the southeast corner of this property through which this water normally flowed.

On March 2, 1938, a great and unusual storm occurred. Lytle Creek broke out of its banks at its westerly curve, washed out part of the E Street pavement and proceeded southeasterly, its waters joining those of Warm Creek. Warm Creek broke its bank where it curved to the southwest and the waters of the two streams flooded a large section of the low-lying country between San Bernardino and the Santa Ana River to the south. Some of these waters in considerable volume collected in and followed the waterway we have described. It washed out E Street opposite the southerly half of plaintiff's property and cut a considerable channel, in some places seven feet deep, where the waterway had existed before and much wider than the former modest channel. Plaintiff's property was flooded and silt and debris deposited upon it and on the floors of his buildings. The southeast corner of the property was washed away and the machine shop was considerably damaged.

As soon as the crest of the flood had passed the break in the southerly bank of Warm Creek was repaired and the water was returned into the former channel which passed under E Street north of plaintiff's property. Within a short time after March 2d, and before defendants began the work of repairing the road, vehicular traffic could reach plaintiff's property from the north over the old grade of E Street. A highway engineer testifying for defendants was of the opinion this was done about two days after the flood though he said the trip would be rough because of the broken and bulging pavement. No vehicular traffic could pass over E Street south of plaintiff's property. The highway department constructed a detour along the east side of E Street to permit vehicles to pass during the time of the reconstruction of that street. It is therefore in evidence that after the flood, and prior to the commencement of the work which resulted in the

change of grade, plaintiff's property could be reached, somewhat inconveniently, over a road having the approximate grade of E Street prior to the flood. Plaintiff testified in response to the question: ''How long was that before they got the road fixed to the north? A. Not a week after the flood; I could drive right down to it.''

The lessons of the flood convinced the state engineers in charge of highway construction and repair that it would be necessary to provide for the discharge of much more flood water where it passed under the highway in the old drainage channel than was afforded by the two pipes installed there before March 2, 1938.

A pile bent and timber bridge with a concrete deck approximately 226 feet long was constructed. It was considerably above the grade of the old road so approaches were constructed both north and south of the bridge. Both approaches started at about the level of the old grade and rose to each end of the new bridge. An engineer for the highway department testified that the approach was 3½ feet above the old grade at the north line of plaintiff's property and 4½ feet above that grade at the south line. Witnesses for plaintiff estimated the new grade at between six and seven feet above the level of the Anderson property.

Defendants constructed an approach leading westerly from the pavement on the northerly bridge approach down to the Anderson property.

Anderson testified that he had much difficulty in getting heavy machinery from his shop onto the highway because of the rise in the grade from his land to the pavement; that he had to make a fill on his lot and build a ramp in order to be able to move heavy machinery onto the highway.

▉ Defendants do not question the right of a property owner who has been damaged by a change in grade of a street on which his property abuts to recover damages caused by such change of grade. It is settled in California that such an abutting property owner has an easement in the right of access to the public highway and that he is entitled to compensation for an infringement of his right of ingress and egress under the provisions of section 14 of article I of the Constitution. (See, *Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505] ; *Brown* v. *Board of Supervisors,* 124 Cal. 274 [57 P. 82] ; *McCandless* v. *City of Los Angeles,* 214 Cal. 67 [4 P.2d 139] ; *Eachus* v. *City of Los Angeles,* 130 Cal. 492 [62 P. 829, 80

Am.St.Rep. 147] ; *Geurkink* v. *City of Petaluma,* 112 Cal. 306 [44 P. 570] ; *Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 P. 750].)

Defendants argue that the evidence of damage is insufficient to support the verdict and that the trial court committed serious error sufficient to justify a reversal of the judgment in admitting evidence, over their repeated objections, of the value of plaintiff's property prior to its damage by the flood as a basis for estimating his damage by deducting therefrom its value after the construction of the bridge and the completion of the approaches to it. Defendants made several motions to strike out such testimony which were denied.

We agree with defendants that it was error to admit testimony of the value of plaintiff's property prior to the flood as it furnished no proper basis for estimating his damage resulting from the change of grade. A most cursory examination of the record and inspection of the exhibits discloses that the flood caused plaintiff serious damage. It was a great and unusual storm and defendants were in no way responsible for that damage. The proper measure of his damage caused by the change of grade is the depreciation in value of plaintiff's property caused by and resulting from the change of grade and from that cause alone. (See, *Rose* v. *State of California, supra; Muller* v. *Southern Pac. Branch Ry. Co.,* 83 Cal. 240 [23 P. 265] ; *McDougald* v. *Southern Pac. R. R. Co.,* 162 Cal. 1 [120 P. 766].) The value of the property at the time the improvement was started and the extent of the depreciation of that value caused by the change of grade and not the depreciation of the value of the property at some prior time is the true measure of damage. It follows that evidence of value of the property prior to the flood had no proper place in the record and that objections to the introduction of that evidence should have been sustained. Counsel for plaintiff recognized this to be true because in offering the evidence they agreed to segregate the damage caused by the flood from that caused by the change of grade. This they failed to do in the examination of either of their two witnesses who testified on the question of valuation of the property. Defendants assumed that burden in cross-examination. They were unsuccessful with plaintiff who testified his property had a value of $15,000 prior to the flood and of $5,000 after the change of grade. He was unable to esti-

mate the damage caused by the flood or the value of his property at the time the work started which resulted in the change of grade. The motion to strike his testimony as to values prior to the flood should have been granted.

Defendants' counsel were more successful in their cross-examination of George W. Holbrook, the other witness called by plaintiff, on the question of values. He estimated the value of the property at $13,775 prior to the flood and at one third that amount after the change of grade. On cross-examination he testified that the value of the land had not been reduced by the flood but that the value of the buildings had been reduced by $1,000 which he thought it would cost him to repair them. Thus he estimated the value of the property at $12,775 after the flood and at the time defendants started the work on the road and plaintiff's damage caused by the change of grade at two thirds of that amount which would be $8,516.66. The value of this evidence was considerably lessened by the admissions of the witness that he was not a contractor or builder and knew little of the cost of repair. He was very reluctant to estimate the damage to the buildings but this testimony was brought by defendants and is in the record. The weight to be given it is a question addressed to the trier of fact and not to this court.

At the close of the evidence the jury was taken to view the premises. What they saw there is evidence and from its very nature is not incorporated in the written record. We are required to presume that evidence not included in the record supports the verdict and judgment. (*Haase* v. *Central Union H. S. Dist.*, 27 Cal.App.2d 319 [80 P.2d 1044].) Evidence obtained by the trier of fact viewing the premises has been held sufficient to support a judgment. (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291 [83 P.2d 942]; *Gates* v. *McKinnon*, 18 Cal.2d 179 [114 P.2d 576]; *Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576]; *Rose* v. *State of California, supra; Universal Sales Corp.* v. *California etc. Co.*, 20 Cal.2d 751 [128 P.2d 665]; *Brugger* v. *Lee Yim*, 12 Cal.App.2d 38 [55 P.2d 564]; *Foothill Ditch Co.* v. *Wallace Ranch W. Co.*, 25 Cal.App.2d 555 [78 P.2d 215]; *Sassano* v. *Roullard*, 27 Cal.App.2d 372 [81 P.2d 213]; *Stacey* v. *Hayes*, 31 Cal.App.2d 422 [88 P.2d 165]; *Jones* v. *Bridges*, 38 Cal. App.2d 341 [101 P.2d 91].)

This conclusion does not leave the amount of dam-

ages awarded by the jury supported by nothing more than the guess or speculation of that body. The condition of plaintiff's property, both before and immediately after the flood, was fully described by witnesses and numerous pictures were introduced so the jury was fully informed on that subject. The damages recoverable by plaintiff were limited to those caused by interference with his convenient ingress to and egress from his property resulting from the change of grade. The added difficulty, inconvenience and expense in getting to and from the property is the real element causing his damage and the decrease in the value of his property. The extent and amount of this damage might have been apparent to the citizens of the county who composed the jury. They were not necessarily matters exclusively within the knowledge of real estate brokers or appraisers who qualified and testified as experts. (See, *Robinson* v. *County of San Diego,* 115 Cal.App. 153 [300 P. 971].) Regardless of this view of the case the jurors had before them the evidence of Holbrook which supports the verdict and judgment even though he estimated the damage at a much larger sum than that fixed by the jury.

It follows that the argument that there is no evidence in the record to support the judgment because no proper measure of damage can be found is not supported. Therefore we must consider whether the errors we have already pointed out in admitting evidence and in refusing to strike out evidence are sufficiently prejudicial to require a reversal of the judgment.

█ At the request of defendants the trial court gave the following instructions to the jury:

"In determining the issues, you are not to compare the conditions existing before the flood of March, 1938, with those which existed after the construction of the bridge and its approaches by the State of California. Rather, you are to consider the conditions which existed at the time the State of California commenced the construction of the bridge and approaches and those conditions which existed immediately after such construction was completed.

"You are instructed that the defendant is not responsible to the plaintiff, W. D. Anderson, for any damage resulting to the plaintiff's land or to his ingress and egress thereto and therefrom as a consequence of the flood of March, 1938.

"You are instructed that under the law the defendant, the State of California, was not obligated to restore or to re-

place any portions of the highway which had been damaged or destroyed in the flood of March, 1938, and, accordingly, it is your duty to determine from the evidence whether the construction of the bridge and approaches resulted in an impairment of the access available to and from the plaintiff's land in the condition in which the highway and the land were left by the said flood. . . .

"If you find from the evidence that the plaintiff's access has been substantially impaired as a result of the construction of the bridge and its approaches, it will then be necessary for you to ascertain the amount of such damages. This you will do by determining the market value of the plaintiff's property as it existed immediately prior to the said construction and the market value thereof immediately after said construction. The difference, if any, between these two figures will be the amount of such damage. In ascertaining such damages, you are to exclude all depreciation in the market value of the plaintiff's property which resulted from the flood of March, 1938, as it would be unlawful for you to require the defendant, the State of California, to compensate the plaintiff for any such flood damage."

These instructions are clear and it is not probable that they could have been misunderstood by the jurors. They were proposed by defendants and are as favorable as they could have expected. Their effect was to instruct the jury to disregard the evidence of the value of plaintiff's property prior to the flood as a measure of his damage. We are required to presume that the jury followed the instructions given by the trial judge.

In view of the relatively small amount of damages awarded by the jury, when compared with the $10,000 asked by plaintiff in his pleadings and fixed in his evidence, and the $8,516.66 damages shown by the only competent evidence offered by his witness, coupled with the further undeniable fact that the change of grade actually impaired, to some extent at least, the convenient ingress to and egress from his property for the benefit of the public, we are not convinced that the errors committed resulted in a miscarriage of justice. Under these circumstances we are not permitted to reverse the judgment. (Sec. 4½ art. VI, Constitution.)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.